RAYBESTOS-MANHATTAN, INC. *v.* PLANNING & ZONING COMMISSION OF THE TOWN OF TRUMBULL

SPEZIALE, C. J., PETERS, PARSKEY, SPONZO and DALY, Js.

Argued January 11—decision released March 16, 1982

*Burton S. Yaffie,* for the appellant (defendant).

*Raymond W. Beckwith,* with whom on the brief was *Robert Sims,* for the appellee (plaintiff).

DALY, J. This is an appeal from the judgment of the trial court reversing the defendant's (hereinafter commission) denial of the plaintiff's (hereinafter company) application for subdivision approval of certain property located on Fodor Lane (now Oakview Drive) in Trumbull, to permit the use of those premises as conforming building lots.

The factual circumstances are undisputed: In 1970, the company acquired some thirty-seven and one-half acres of land; of these, approximately thirty acres were zoned Industrial IL-2, and the remaining seven and one-half acres were zoned Residential A. Shortly thereafter, the commission authorized a zone change to Industrial IL-2 from the Residential A classification for the seven and one-half acres. At the time of this zone change, the company submitted a preliminary drawing showing a subdivision of the property into four parcels separated by a proposed north-south dead end road with a cul-de-sac, designated as Oakview Drive, and a proposed east-west road connecting with Reservoir Avenue, located to the east, and designated as an access road on the map. This access road was the forerunner of the present Lindeman Drive in the Trumbull Comprehensive Plan. The company never applied for approval of the subdivision plan for the four lots.

On April 5, 1971, the company filed an application for approval of a plan for a preliminary subdivision of the property into two parcels, divided from north to south by Oakview Drive. Parcel I, located to the east of Oakview Drive, is the present location of the company's world corporate headquarters. Parcel II at that time remained undeveloped. The commission approved this application on April 21, 1971,

delineating certain conditions relative to Oakview Drive and specifying that "future east-west roads might be required." Thereafter the commission approved the final plan of subdivision and granted the special permit application for the company's world corporate headquarters.

On February 6, 1974, the company applied for final approval of a further subdivision plan to create two parcels of land from Parcel II, located on the easterly side of Oakview Drive. The commission denied this application on February 27, 1974; the court dismissed the plaintiff's appeal from this denial on June 10, 1975, because the company had failed to establish aggrievement.

Meanwhile, the commission had created and adopted for the town of Trumbull a revised plan of development, which became effective on December 11, 1974. This plan specifically proposed the extension of Lindeman Drive, between Reservoir Avenue and Oakview Drive.

To reflect and implement this new plan of development, the commission revised the subdivision regulations in July of 1975. Thereafter, on April 7, 1976, the company filed the present application, which mirrored the one the commission had denied two years earlier. When the commission also denied the April, 1976 application, the company appealed to the trial court. That court remanded the case to the commission, holding that the commission lacked the necessary authority under the Trumbull planning and zoning regulations "to exact from the plaintiffs a dedication of a portion of the requested subdivision for use as a public highway to be an

extension of Lindeman Drive a highway which in its present state does not extend to plaintiffs' boundary."

The commission has appealed from this decision, claiming that the court erred (a) in finding that the commission lacked authority to require, as a condition of subdivision approval, that the company provide for the extension of Lindeman Drive to the boundary of its property; (b) in failing to dismiss the case because the company's original application did not comply with the requirements set forth in the 1974 plan of development, effective December, 1974, and the Trumbull subdivision regulations, effective in July, 1975; (c) in failing to find that the company's appeal should have been dismissed because of a lack of any change of conditions between the commission's 1974 denial of an application identical to that proffered in 1976; and (d) in finding that the commission acted illegally, arbitrarily and in abuse of its discretion.

In reviewing these claims of error, we are mindful that "courts do not and should not substitute their judgment for that of the local authority." *Hall* v. *Planning & Zoning Board,* 153 Conn. 574, 577, 219 A.2d 445 (1966). If it appears that the commission has reasonably and fairly exercised its honest judgment after a full hearing, the trial court must be cautious about disturbing the decision of the authority. *Young* v. *Town Planning & Zoning Commission,* 151 Conn. 235, 245, 196 A.2d 427 (1963); *Kutcher* v. *Town Planning Commission,* 138 Conn. 705, 710, 88 A.2d 538 (1952). The trial court may not substitute its judgment for the wide and liberal discretion vested in the local authority when acting within its prescribed legislative powers. *Farring-*

*ton* v. *Zoning Board of Appeals,* 177 Conn. 186, 190, 413 A.2d 817 (1979) ; *Summ* v. *Zoning Commission,* 150 Conn. 79, 89, 186 A.2d 160 (1962). The court must invest such broad discretion in these authorities when determining the public need and the manner of meeting it, because they are closest to the circumstances and conditions which "create the problem and shape the solution." *Stiles* v. *Town Council,* 159 Conn. 212, 219, 268 A.2d 395 (1970). Thus, the court may grant relief on appeal only where the local authority has acted illegally or arbitrarily or has abused its discretion. *McCrann* v. *Town Planning & Zoning Commission,* 161 Conn. 65, 74, 282 A.2d 900 (1971).

When disapproving the application for the 1976 subdivision, the commission stated that the proposed "lot layout is not satisfactory in that it precludes the extension of Lindeman Drive through to intersect with Oakview Drive. For a more proper arrangement and development of streets in this area . . . provisions shall be made for extension of Lindeman Drive. The . . . development proposed . . . would result in substantial increase in traffic volume . . . ." The commission also found that extension of Lindeman Drive would facilitate dispersal of traffic from the development to "arterial and expressway streets at peak hours." Further, the commisssion found that the extension would provide "more adequate access for fire fighting apparatus, police protection and other essential services; thus, protecting the public welfare and minimizing any hazardous effects on neighboring areas."

This court has previously sanctioned the authority of a planning and zoning commission to impose upon a property owner conditions precedent

to subdivision approval, particularly where compliance with the condition would cause the proposed subdivision to comport more closely with the comprehensive plan of development. See *Whittaker* v. *Zoning Board of Appeals*, 179 Conn. 650, 660, 427 A.2d 1346 (1980); *Nicoli* v. *Planning & Zoning Commission*, 171 Conn. 89, 95–96, 368 A.2d 24 (1976). "The imposition of subdivision controls is an exercise of the police power, and it seeks to accomplish the orthodox ends of the police power by serving the health, safety, morals, and general welfare of the community . . . . The public benefit which flows from subdivision control does not require that such control be exercised through the power of eminent domain rather than the police power." 4 Anderson, American Law of Zoning (2d Ed.) § 23.04. Where reasonable and impartial, a commission's power to regulate the use of land does not constitute a taking without due process of law or just compensation. "One who chooses to engage in subdividing land by that decision thus chooses also to be subject to the reasonable regulation of the local planning commission." *Whittaker* v. *Zoning Board of Appeals*, supra, 661. Accordingly, we conclude that the commission was authorized to require the extension of Lindeman Drive to protect the health, safety and welfare of the inhabitants of the town of Trumbull.

Furthermore, the commission's actions were authorized by pertinent state statutes, as well as the Trumbull subdivision regulations and plan of development. Section 8-25[1] empowers a planning

[1] "[General Statutes] Sec. 8-25. SUBDIVISION OF LAND. No subdivision of land shall be made until a plan for such subdivision has been approved by the commission. Any person, firm or corporation making any subdivision of land without the approval of the

and zoning commission to adopt subdivision reg-
ulations which promote the harmonious develop-
ment of local traffic patterns so as "to provide an

commission shall be fined not more than five hundred dollars for each
lot sold or offered for sale or so subdivided. Any plan for subdivi-
sion shall, upon approval, or when taken as approved by reason of
the failure of the commission to act, be filed or recorded by the
applicant in the office of the town clerk within ninety days of the
date such plan is delivered to the applicant, but if it is a plan for
subdivision wholly or partially within a district, it shall be filed in
the offices of both the district clerk and the town clerk, and any plan,
not so filed or recorded within the prescribed time shall become null
and void, except that the commission may extend the time for such
filing for two additional periods of ninety days and the plan shall
remain valid until the expiration of such extended time. All such
plans shall be delivered to the applicant for filing or recording
promptly after the time for taking an appeal from the action of the
commission has elapsed, and in the event of an appeal, promptly
upon the termination of such appeal by dismissal, withdrawal or
judgment in favor of the applicant. No such plan shall be recorded
or filed by the town clerk or district clerk or other officer authorized
to record or file plans until its approval has been endorsed thereon
by the chairman or secretary of the commission, and the filing or
recording of a subdivision plan without such approval shall be void.
Before exercising the powers granted in this section, the commission
shall adopt regulations covering the subdivision of land. No such
regulations shall become effective until after a public hearing, notice
of the time, place and purpose of which shall be given by publication
in a newspaper of general circulation in the municipality at least
twice, at intervals of not less than two days, the first not more than
fifteen days nor less than ten days, and the last not less than two
days prior to the date of such hearing. Such regulations shall
provide that the land to be subdivided shall be of such character
that it can be used for building purposes without danger to health
or the public safety, that proper provision shall be made for water,
drainage and sewerage and, in areas contiguous to brooks, rivers or
other bodies of water subject to flooding, including tidal flooding,
that proper provision shall be made for protective flood control meas-
ures and that the proposed streets are in harmony with existing or
proposed principal thoroughfares shown in the plan of development as
described in section 8-23, especially in regard to safe intersections
with such thoroughfares, and so arranged and of such width, as to
provide an adequate and convenient system for present and pro-
spective traffic needs. Such regulations shall also provide that the
commission may require the provision of open spaces, parks and

adequate and convenient system for present and prospective traffic needs." Moreover, § 8-23[2] authorizes a commission to prepare a plan of development

playgrounds when, and in places, deemed proper by the planning commission, which open spaces, parks and playgrounds shall be shown on the subdivision plan. Such regulations may provide that proper provision be made for sedimentation control, and the control of erosion caused by wind or water. Such regulations may also encourage energy-efficient patterns of development, the use of solar and other renewable forms of energy, and energy conservation. The commission may also prescribe the extent to which and the manner in which streets shall be graded and improved and public utilites and services provided and, in lieu of the completion of such work and installations previous to the final approval of a plan, the commission may accept a bond in an amount and with surety and conditions satisfactory to it securing to the municipality the actual construction, maintenance and installation of such improvements and utilities within a period specified in the bond. Such regulations may provide, in lieu of the completion of the work and installations above referred to, previous to the final approval of a plan, for an assessment or other method whereby the municipality is put in an assured position to do such work and make such installations at the expense of the owners of the property within the subdivision."

[2] "[General Statutes] Sec. 8-23. PLAN OF DEVELOPMENT. The commission shall prepare, adopt and amend a plan of development for the municipality. Such plan shall show the commission's recommendation for the most desirable use of land within the municipality for residential, recreational, commercial, industrial and other purposes and for the most desirable density of population in the several parts of the municipality. Such plan may also show the commission's recommendation for a system of principal thoroughfares, parkways, bridges, streets and other public ways; for airports, parks, playgrounds and other public grounds; for general location, relocation and improvement of public buildings; for the general location and extent of public utilites and terminals, whether publicly or privately owned, for water, sewerage, light, power, transit and other purposes; and for the extent and location of public housing projects. Such other recommendations may be made by the commission and included in the plan as will, in its judgment, be benefical to the municipality. The plan of development shall be a statement of policies, goals and standards for the physical and economic development of the municipality, and may include all necessary and related maps, explanatory material, photographs, charts or other pertinent data and information relative to the past, present and future trends of the municipality, and may include recommended programs for the implementation of the plan, including a schedule and budget for public capital

for the community which shows "the commission's recommendation for a system of principal thorough-fares, parkways, bridges, streets and other public ways . . . ."

projects, and a program for enactment and enforcement of zoning and subdivision controls, building and housing codes and safety regulations. In preparing such plan the commission shall consider the community development action plan of the municipality, if any, and may consider physical, social, economic and governmental conditions and trends, including, but not limited to, local, regional and state studies of the human resource, education, health, housing, recreation, social services, public utilities, public protection, transportation and circulation, cultural and interpersonal communications needs of the municipality, the protection of existing and potential public surface and ground drinking water supplies and the objectives of energy-efficient patterns of development, the use of solar and other renewable forms of energy, and energy conservation. The plan shall be designed to promote with the greatest efficiency and economy the coordinated development of the municipality and the general welfare and prosperity of its people. The commission may prepare and adopt plans for the redevelopment and improvement of districts or neighborhoods which, in its judgment, contain special problems or show a trend toward lower land values. The commission may adopt the plan of development by a single resolution or may, by successive resolutions, adopt parts of the plan, whether geographical or functional, and amendments thereto. Prior to adopting the development plan or any part thereof or amendment thereto, the commission shall file in the office of the town clerk a copy of such plan or part thereof or amendment thereto but, in the case of a district commission, such commission shall file such information in the offices of both the district clerk and the town clerk, and shall hold at least one public hearing thereon, notice of the time and place of which shall be published in a newspaper having general circulation in the municipality at least twice at intervals of not less than two days, the first not more than fifteen days, nor less than ten days, and the last not less than two days prior to the date of each such hearing, which notice shall make reference to the filing of such records in the office of the town clerk, or both the district clerk and the town clerk, as the case may be. Any plan or part thereof or amendment thereto shall, upon adoption by the commission, be filed in the office of the town clerk, but, if it is a district plan or amendment, it shall be filed in the offices of both the district and town clerk, and shall become effective at a time established by the commission, provided notice thereof shall be published in a newspaper having general circulation in the municipality prior to such effective date."

Pursuant to these statutes, the commission created the 1974 plan of development, which specifically indicated its proposal for extension of Lindeman Drive: "Manhattan-Raybestos has purchased four sites off of Oakview Drive, and has begun construction of a corporate headquarters on one of them . . . . Access to these sites would be improved greatly by construction of a cross-connector linking Oakview Drive with Reservoir Avenue." Presaging this aspect of the 1974 plan, the commission's April 21, 1971 approval of the company's application for a preliminary plan of subdivision specifically stated that "future east-west roads may be required."

Finally, the Trumbull subdivision regulations, which mandate that "[a]ll subdivisions shall conform to the duly adopted and existing Town Plan as approved by the Commission," provide that "[w]henever any proposed subdivision shall adjoin another tract or acreage, streets that may logically be extended in the event of subdivision of such adjoining acreage shall be required to extend through to the boundary of the adjoining acreage." Trumbull Subdivision Regulations, c. V, §§ 1, 3. These regulations further provide that dead-end or cul-de-sac streets "shall not exceed 750 feet in length." Id., c. V, § 4. Lindeman Drive is 1000 feet in length, and would be in violation of the aforesaid section if not cross-connected.

Accordingly, we find that the commission possessed ample authority to disapprove the proposed subdivision absent an extension of Lindeman Drive. In view of our finding, it is unnecessary to consider the other claims of error.

There is error, the judgment is set aside and the case remanded with direction to render judgment for the defendant.

In this opinion the other judges concurred.