[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff, DeWitt C. Lewis, appeals the decision of the defendant Zoning Board of Appeals [the "Board"] requiring plaintiff to obtain a variance to construct an accessory apartment and then denying said variance.
In order to take advantage of a statutory right to appeal from a decision of an administrative agency, there must be strict compliance with the statutory provisions which created that right. Simko v. Zoning Board of Appeals, 206 Conn. 374,377 (1988). These provisions are mandatory and jurisdictional, failure to comply subjects the appeal to dismissal. Id. Section 8-10 of the General Statutes provides that appeals from decisions of zoning boards of appeals may be taken to the Superior court in accordance with 8-8 and 8-9. Conn. Gen. Stat.8-10 (rev'd to 1989). CT Page 1044
Aggrievement is a prerequisite to maintaining an appeal. Smith v. Planning and Zoning Board, 203 Conn. 317, 321 (1987). An owner of the subject property is aggrieved and entitled to bring an appeal. See Bossert Corp. v. Norwalk, 157 Conn. 279,285 (1968). At a hearing held on May 3, 1990, plaintiff submitted a deed documenting his ownership of the subject parcel. (Plaintiff's Exhibit A, 5/3/90). The court finds that the plaintiff is aggrieved by the Board's decision and entitled to maintain this appeal.
A person who is aggrieved by a decision of the board "may, within fifteen days from the date when notice of such decision was published in a newspaper pursuant to the provisions of 8-3
or 8-7, as the case may be, take an appeal to the superior court. . . ." Conn. Gen. Stat. 8-8 (a) (rev'd to 1989). Although the record does not contain a publisher's affidavit or legal notice stating the date on which the Board's decision was published, plaintiff alleges and the Board admits that notice of the Board's decision was published on May 3, 1989. The Chairman of the Board, the Town Clerk and the City Clerk were all served on May 17, 1989, within the fifteen-day appeal period. Public Act 90-286 provides that appeals from municipal authorities such as the Board in which a decision was not yet rendered as of the date of its passage are to be considered timely if the defendants were served within the fifteen-day period. Conn. Pub. Acts No. 90-285, secs. 1, 3, 9 (1990). Therefore, the plaintiff's appeal is timely.
A trial court may grant relief on appeal from a decision of an administrative authority only where the authority has acted illegally or arbitrarily or has abused its discretion. Raybestos-Manhattan, Inc. v. Planning Zoning Commission,186 Conn. 466, 470 (1982). On appeal, the court "may reverse or affirm, wholly or partly, or may modify or revise the decision appeal from." Conn. Gen. Stat. 8-8 (f) (rev'd to 1989). The burden of proof to demonstrate that the local authority acted improperly is upon the plaintiff. Adolphson v. Zoning Board of Appeals, 205 Conn. 703, 707 (1988); Burnham v. Planning Zoning Commission, 189 Conn. 261, 266 (1983). Although raised in the complaint, issues which are not briefed are considered abandoned. State v. Ramsundar, 204 Conn. 4, 16 (1987) DeMilo v. West Haven, 189 Conn. 671, 681-82 n. 8 (1983).
The following facts are necessary to understand the issues raised in this appeal. Plaintiff owns a parcel of land which lies in three (3) different building zones, "An, "AA", and "AAA", and which contains four separate structures, three of which are residential uses. (Plaintiff's Exhibit A, 5/3/90, Deed; Record, Item 4, Transcript, pp. 43-4.) The four CT Page 1045 structures were originally part of a larger tract owned by one Nicholas Marrone and predate the enactment of zoning regulations in 1929. (Record, Item 4, p. 22.) Testimony was given to the effect that in 1967, Marrone sought permission to subdivide his property and was told by the planning and zoning commission that: it would grant subdivision approval if the four structures- remained on one lot in the subdivision, and if the zoning board of appeals granted a variance to allow the four structures to exist on one lot. (Record, Item 4, pp. 23-3.) Marrone obtained the variance and received subdivision approval. (Record Item 4, p. 23; Exhibit 3 to Item 6, 1967 Variance). The newly created lot on which the four structures still stand, shown on a map prepared for Marrone as Lot 5, is now owned by plaintiff. (Plaintiff's Exhibit A, 5/3/90, Deed; Record: Item 3, Map; Item 4, p. 23.)
On October 4, 1988, plaintiff applied for a permit to "re-build" the garage attached to one of the residences and to build an accessory apartment "above [the] re-built garage." (Record, Item 9, p. 4, Application.) The permit was issued but, on December 1, 1988, was revoked, and plaintiff was issued a cease and desist order. (Record, Exh. 2 to Item 6.) The reason therefor, as stated in the cease and desist order, is as follows:
 An inspection of the site indicates that you have 3 single family homes on this lot. The addition of an accessory apartment therefore constitutes an expansion of a nonconforming use (3 homes).
(Record, Exhibit 2 to Item 6.)
Subsequently, the 1967 variance was discovered by plaintiff and brought to the attention of the Zoning Inspector, who then informed plaintiff by letter dated January 13, 1989 of the following:
 Enclosed is a copy of a Variance #67-0907-09 which permitted 3 single family units on one lot. Based upon the approved variance your permit for the accessory apartment is valid. I am therefore revoking the cease and desist order of 12/1/88 and you may continue with your project. Please contact the Building Department, Dave Johnson, so you can have your Building Permit reinstated.
(Record, Exhibit 3 to Item 6.) On January 23, 1989, plaintiff sought reinstatement of the permit, but the Building Department did not agree with the Zoning Inspector's conclusions and refused to reinstate the permit. (Record: Exhibit C to Item 5; CT Page 1046 Item 9, p. 13.) By letter dated January 23, 1989, plaintiff informed the Zoning Inspector of the Building Department's refusal to reinstate the permit and of plaintiff's intention to continue construction in accordance with the Zoning Inspector's letter of January 13, 1989. Plaintiff also requested the Zoning Inspector to advise all concerned Departments of his validation of the permit and to instruct them to cooperate on any further inspections. (Record, Exhibit C to Item 5.) By letter dated March 17, 1989, the Building Department notified plaintiff that he was in violation of the building code because his permit had been revoked on December 1, 1988. (Record, Item 9, p. 9.)
When the cease and desist order was originally issued, plaintiff filed an appeal of that action to the Board. (Record, Item 9, pp. 1-1.) In his brief, plaintiff states that when the cease and desist order was revoked, the appeal, although not withdrawn, was not prosecuted. When the Building Department sent the violation notice in March of 1989, the appeal was reactivated and reframed by the Zoning Inspector to include a request for variances to "(1) Expand a non-conforming use created by variance #67-0907-09. . . (2) Vary if required [the] requirements for accessory apartments. . . ." (Record, Item 9, p. 16.)
On April 27, 1989, the Board held a public hearing on plaintiff's appeal/request for variances. (Record, Item 4.) Also on that date, the Board decided the following: (1) Plaintiff's application for an accessory apartment complies with the specifications set forth in 118-420 of the Norwalk Building Zone Regulations [the "Regulations"] (Record, Item 4, Transcript, Executive Session, pp. 48-50); (2) The property is non-conforming despite the 1967 variance and an accessory apartment may not be built without a further variance (Record, Item 4, pp. 50-1); and (3) The variance for an accessory apartment is denied (Record, Item 4, pp. 51-2).
Section 118-420 of the Regulations, entitled "Accessory apartments", provides as follows:
 118-420. Accessory apartments [Amended effective 1-27-84; effective 9-26-86]
 A. Purpose and intent. The intent of this regulation is to encourage the creation of accessory apartments in existing single-family residences for the purpose of providing rental housing for the elderly, single persons and small families. This regulation is designed to ensure that, in creating an accessory apartment, the single-family character of the CT Page 1047 principal dwelling will be retained. Accessory apartments are further intended to enable the viability of Norwalk's single-family zones to be continued.
 B. Regulations, Accessory apartments shall be permitted in AAA, AA, A and B Residence Zones, subject to the following requirements:
 (1) Accessory apartments shall be permitted in single-family dwellings which:
 (a) Have been in existence a minimum of three (3) years. (b) Are located on lots meeting the minimum lot area and width requirements of applicable zone, except that lots in the B Residence Zone must meet one and one-fourth (14) times the minimum area requirement of the B Residence Zone.
 (2) The owner of the property must reside on the premises.
 (3) To the maximum extent practicable, the principal dwelling and the accessory apartment shall utilize public water and sewer. If such facilities are not available within a reasonable distance, the use of private water and septic systems shall be subject to approval by the Department of Health.
C. Additional standards.
 (1) An accessory apartment may extend or enlarge the principal dwelling, provided that:
 (a) The single-family character of the dwelling is not changed. (b) The lot coverage of the principal dwelling is not increased by more than one hundred fifty (150) square feet. (c) A dormer does not extend in height beyond the existing roof ridge line and does not extend in depth beyond the first floor exterior wall. CT Page 1048
 (2) The accessory apartment shall be a minimum of four hundred (400) square feet in area but not more than seven hundred (700) square feet in area. The area of the principal dwelling shall not be reduced to less than eight hundred (800) square feet.
 (3) An accessory apartment shall contain not more than (1) bedroom, and occupancy shall be limited to three (3) persons, not more than two (2) of whom shall be adults.
 (4) Three (3) off-street parking spaces shall be provided: two (2) spaces per principal dwelling and one (1) space per accessory apartment. Such parking shall be adequately drained and suitably screened from adjacent residences.
D. Procedure for approval.
 (1) Applications for accessory apartments shall be subject to approval solely by the Zoning Inspector.
 (2) A certificate in the form of an affidavit which verifies that the owner continues to reside on the premises and that all other conditions met at the time of the original application remain unchanged shall be submitted to the Zoning Inspector by January 31 of each year.[1]
Plaintiff does not challenge the Board's determination that his accessory apartment complies with the specifications set forth in 118-420 of the Regulations. He claims that once the Board determined that the accessory apartment complied with the specifications in 118-420, it was required to issue permission to proceed with the construction. He argues that in deciding that a further variance was needed, the board added standards or conditions of 118-420, expanded 118-420 by implication to include terms not expressed, engaged in legislative activity, frustrated the purpose of 118-420, violated rules of statutory construction, ignored the significance of 118-420 as a section itself permitting departures from the requirements of the regulations, and ignored the significance of the silence in 118-420 with regard to already varied property. Plaintiff also argues that once a variance is granted, the property ceases to be nonconforming and is not subject to the limitations and restrictions placed on nonconforming properties. CT Page 1049
In its brief, the Board acknowledges that the plaintiff's application for an accessory apartment met the requirements of 118-420. It also admits that the parcel is "legal by virtue of a previous variance", but argues that it "is also allowed to continue as a nonconforming use." The Board reasons that since the parcel is nonconforming, a variance was required to construct an accessory apartment. However, because a nonconforming use may not be expanded by variance, the variance was denied. Section 118-800, entitled "Nonconformities", states, in part, as follows:
C. Nonconforming uses.
 (1) A nonconforming use of land or structure shall not be enlarged, extended or altered unless the use is changed to one permitted in the zone in which it is located. No nonconforming use shall be extended or expanded by variance.
The board argues that 118-420 prohibits expansion of "this legally nonconforming use" and, therefore, the action of the Board was proper.
Thus, the Board determined that the requirements for accessory apartments were satisfied. However, it also determined that the property was nonconforming and, on this basis, concluded that a variance was required. But because a nonconformity may not be extended by a variance, the Board denied the variance. This circular reasoning finds no support in the regulations.
A special exception or special permit allows a property owner to use his property in a manner expressly permitted by the regulations. A.P.W. Holding Corp. v. Planning Zoning Board,167 Conn. 182, 185 (1974). In contrast, a variance is a prohibited use which may be allowed by virtue of the board's authority to vary the regulations. Adolphson, 205 Conn. at 710. Section 118-420 expressly permits accessory apartments, subject to certain requirements. Therefore, 118-420 contemplates the construction of accessory apartments by permit. Section 118-420 sets forth no requirement that a variance be obtained.
Plaintiff correctly argues that the Board has no discretion to deny a special permit or special exception if the regulations are satisfied. Manchester v. Zoning Board of Appeals, 18 Conn. App. 69, 72 (1989). However, because the Board concluded that plaintiff's property was nonconforming, it also concluded that plaintiff was required to obtain a variance as well as to satisfy the requirements of 118-420. As already CT Page 1050 stated, a variance is a prohibited use or structure which is allowed by the board by way of its authority to vary the regulations. Adolphson, 205 Conn. at 710. A nonconformity is a use or structure which is prohibited under the zoning regulations but is allowed by virtue of its existence at the time the regulations are adopted. Id. Plaintiff argues that a variance is not a nonconformity and is, therefore, not subject to restrictions placed upon nonconformities. It has been noted that such a conflict may arise because "a use made pursuant to a variance may. . .be considered either as a permitted use (because of the official action approving it by the. . . board . . .), or it may be treated as a nonconformity because it is a use that is prohibited by the. . . regulations." Tondro, Connecticut Land Use Regulations, III.E.4., p. 70 (1979 
Supp. 1983).
However, the Connecticut Supreme Court, when confronted with this issue, refused to state a general rule, but rather looked to the language of the regulations. See Talarico v. Conkling, 168 Conn. 194, 199-200 (1975); see also Melody v. Zoning Board of Appeals, 158 Conn. 516, 519 (1969). In Talarico, the regulation defining nonconformity included any structure or building which, "whether by variance or otherwise, " fails to conform to the regulations. Talarico,168 Conn. at 199. Thus, a variance may be treated as nonconformity if the applicable regulations so provide. Id. at 199-200.
In the instant case, plaintiff's property was once part of a larger tract which was a nonconformity in that it existed prior to the adoption of zoning regulations. That tract was subdivided after the adoption of regulations. The piece now owned by plaintiff never existed as a nonconformity apart from the larger tract. It was made legal and is permitted by a variance.
The regulation concerning nonconformities, 118-800, does not specifically include variances as nonconformities. Section 118-800B, entitled "General regulations:, discusses nonconformities "which lawfully exist[ed] before the effective date of these regulations or amendments thereto. . .", and sets forth the circumstances under which a nonconformity shall be "deemed to have existed before the effective date of these regulations or amendments thereto." There is no mention of any specific type of nonconformity except for those which existed prior to the adoption or amendment of the Regulations.
On the other hand, 118-800A states, in part, as follows:
 Purpose and intent. There exists throughout Norwalk lawful losts, structures and uses of land and structures CT Page 1051 which are nonconforming because they do not comply with these regulations as originally adopted or subsequently amended.
Applying this language, a variance would be a nonconformity because it does not comply with the Regulations as originally adopted or amended. Also, 118-800B(4) specifically states that uses permitted by special permit in accordance with 118-1450 are deemed "conforming", but does not state that uses permitted by variance are deemed conforming.
"Zoning regulations, as they are in derogation of common law property rights, cannot be construed to include or exclude by implication what is not clearly within their express terms." Planning Zoning Commission v. Gilbert, 208 Conn. 696, 705
(1988) (citation omitted). "A property owner should be able reasonably to ascertain from the regulations how to use the property in compliance with them." Id. (citations omitted). "The regulations must be interpreted so as to reconcile their provisions and make them operative so far as possible." Id. at 706 (citation omitted). "When more than one construction is possible, we adopt the one that renders the enactment effective and workable and reject any that might lead to unreasonable and bizarre results. Id. (citation omitted).
If the court should determine that plaintiff's property is nonconforming under the facts of this case and/or under the Regulations, then the court could find that the Board acted properly in treating the property as nonconforming. However, whether or not the property is nonconforming the Board's decision cannot stand because a variance is not required in either case.
First, if the Board's stated reason for requiring a variance for an accessory apartment, i.e., that the property is nonconforming, is incorrect, its conclusion that a variance is required is left unsupported. Therefore, if the property is not nonconforming, then once the Board determined that the requirements of 118-420 were satisfied, it should have found that a permit must be issued. See Manchester,18 Conn. App. at 70.
Second, even if plaintiff's property is properly considered nonconforming, the need for a variance does not follow from this conclusion. Nowhere in 118-800 is it stated that a variance is required to extend a nonconforming use. Indeed, 118-800C(1) states the opposite and prohibits any extension of a nonconforming use by variance.
Nor does 118-420 itself require a variance or state that CT Page 1052 a permit to build an accessory apartment may be denied where the property is nonconforming or where a prior variance had been granted. Rather, the stated intent of 118-420 is to encourage the creation of accessory apartments in existing single-family residences and zones without mention of how the single-family residences in those zones came into existence.
"The conditions under which an exception is permitted must be found in the regulations themselves and cannot be altered." Parish of St. Andrew's Church v. Zoning Board of Appeals,155 Conn. 350, 353 (1967). Zoning regulations are in derogation of property rights and cannot be construed to include or exclude by implication what is not clearly within their express terms. Planning Zoning Commission v. Gilbert, 208 Conn. at 705. A zoning ordinance "should be construed so as to give effect to the legislative intent:, while keeping in view the object of the statute .n Stephen Reney Memorial Fund v. Old Saybrook, 4 Conn. App. 111,113 (1985).
The court finds that the Board violated the above principles when it imposed, in addition to the requirements of 118-420, and when it implied, from 118-800, a requirement that a variance must be obtained in this case.
Also 118-800D(1) states that a "nonconforming structure may be enlarged or altered, provided that the enlargement or alteration conforms to these regulations." Since an accessory apartment is permitted under Regulations, it is a conforming use. See Melody, 158 Conn. at 519; Tondro, at 70. Thus, 118-800D(1) allows for the enlargement or alteration of a nonconformity by an accessory apartment.
Therefore, the court finds that the Board acted illegally, arbitrarily, and in abuse of its discretion in requiring, in addition to the requirements set forth in 118-420, that a variance be obtained to build the accessory apartment, and in failing to find that plaintiff was entitled to a permit once the Board determined that his application satisfied the requirements of 118-420.
The appeal of the plaintiff is sustained.
COPPETO, J.
FOOTNOTE