[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the action of the Stonington Zoning Board of Appeals (ZBA) granting defendant Botchis' application for a variance to allow a restaurant to operate year round.
The following facts are taken from the return of record (ROR).
The subject property was improved in 1968 by the construction of a snack bar-restaurant business upon it. (ROR 8, p. 4 of 4). At the time of construction, the property was zoned commercial and the restaurant was a permitted use. (ROR 21, p. 6). The property was rezoned high density residential (RH-10) in 1979. (ROR 21, p. 6). This rezoning caused the restaurant to become a legal nonconforming use under the relevant zoning regulations. (ROR 21, p. 2, 6; see also ROR 21, Sec. 2.11). Defendant William Botchis (Botchis) has operated the restaurant since 1978. (ROR 21, p. 6).
Botchis filed an application for a variance to the ZBA under Stonington Zoning Regulations Sec. 2.12 and Sec. 3.71 on January 10, 1990 (ROR 1, p. 1). This application was apparently filed in response to the ZBA's decision of January 9, 1990, which determined that the restaurant operation is only permitted between March 1 and November 1 of each year and which upheld four cease and desist orders issued by the zoning enforcement officer regarding the subject property. See ROR 10; ROR 21, p. 3.
Botchis sought variances in order to make some physical changes to his property (Sec. 3.71) and to operate the restaurant year round (Sec. 2.12). (ROR 1, p. 1). It is presently open from March 1 to October 31 every year. (ROR 1, p. 1).
The ZBA conducted a public hearing on February 13, 1990, (ROR 21), and granted only the variance as to the limitation on operating the business which, in effect, allows year-round operation of the restaurant.
Plaintiffs Wayne Greene, the Stonington Zoning Enforcement Officer (ZEO) and the Stonington Planning and Zoning Commission (PZC) appealed to this court pursuant to General Statutes Sec. 8-8 (a), contending that the ZBA acted unlawfully, and briefed the following issues, in which they claim:
1. The ZBA erred in determining that the operation of CT Page 9550 the Botchis restaurant on a year-round basis did not constitute an expansion of a nonconforming use in violation of Section 2.12 of the Regulations.
2. The ZBA had no authority to grant a variance to permit the expansion of a nonconforming use where the zoning ordinance prohibits the expansion of a nonconforming use; and
3. The ZBA's determination that Botchis satisfied the legal requirements for a variance under Section 8-6 of the Connecticut General Statutes and Section 8.11 of the Regulations is not reasonably supported by the record.
The other grounds of appeal stated in the plaintiffs' complaint, not having been briefed, are considered abandoned. See State v. Ramsundar, 204 Conn. 4, 16,526 A.2d 1311 (1987).
I. Aggrievement
"[A]ny person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located." General Statutes Section 8-8 (b) (rev'd to 1989, as amended by Conn. Pub. Acts No. 89-356 Sec. 1 [1989]). "Aggrieved persons" includes "any officer, department, board or bureau of the municipality charged with enforcement of any order, requirement or decision of the board." General Statutes Sec.8-8(a)(1) (Rev'd to 1989, as amended).
Plaintiffs Greene and PZC allege in their complaint, and the parties filed a stipulation of facts that Greene, as the Stonington ZEO, is the officer of the municipality of Stonington charged with the enforcement of all orders, requirements and decisions of the ZBA, including the decision of the ZBA on Botchis' application, and that the PZC is the board of the municipality of Stonington charged with the enforcement of orders, requirements and decisions of the ZBA, including the decision of the ZBA on Botchis' application. The plaintiffs are therefore aggrieved.
II. Scope of Judicial Review
A trial court is not at liberty to substitute its CT Page 9551 judgment for that of the administrative tribunal. See Frito-Lay, Inc. v. Planning Zoning Commission, 206 Conn. 554,572-73, 538 A.2d 1039 (1988). The court is only to determine whether the agency has acted illegally, arbitrarily, or in abuse of its discretion. See id., 573; Raybestos-Manhattan, Inc. v. Planning Zoning Commission, 186 Conn. 466, 470,442 A.2d 65 (1982). The court is simply to determine whether the record reasonably supports the conclusions reached by the agency. Primerica v. Planning Zoning Commission,211 Conn. 85, 96, 558 A.2d 646 (1989). The ZBA's action is to be sustained if any one of the reasons stated by it is sufficient to support the decision. Id.; Frito-Lay, Inc., supra, 576; Goldberg v. Zoning Commission, 173 Conn. 23, 25-26,376 A.2d 385 (1977). Where the agency has not provided the reasons for its decision, the court must search the record to determine whether the decision is supported thereby. A.P.W. Holding Corporation v. Planning Zoning Board, 167 Conn. 182, 186,355 A.2d 91 (1974).
The burden of proof to demonstrate that the ZBA acted improperly is upon the plaintiffs. Adolphson v. Zoning Board of Appeals, 205 Conn. 703, 707, 535 A.2d 799 (1988).
III. Basis of ZBA's Decision
The ZBA does not provide reasons for its decision to allow Botchis to open his restaurant for the months of November, December, January and February in either the February 13, 1990 public hearing, (ROR 21), or the notice of decision. (ROR 16). Because the ZBA has not provided the reason for its decision, the court must search the record to determine whether the decision has reasonable support in the record. A.P. W. Holding Corporation v. Planning Zoning Board, supra, 186. The Court notes, however, that when it inquired of counsel whether a transcript of the Board's discussion and deliberations existed, it was informed that they were not recorded. While the Court recognizes that the Board is composed of lay people and that strict adherence to procedure is not always required, the Court disapproves of the Board's failure to record its discussions and deliberations and trusts that such omission will not be repeated.
IV. ZBA's Authority to Grant a Variance
The ZBA's general authority is set forth in Sec. 8.11 of the Stonington Zoning Regulations. See ROR 22, Sec. 8.11.
Plaintiffs first argue that Sec. 8.11(E) of those regulations prohibit the ZBA from issuing use variances CT Page 9552 without a favorable recommendation from the PZC. Section 8.11(E) addresses the issue of approval of gas stations. (ROR 22, Sec. 8.11(E)). Searching throughout Sec. 8.11, the Court finds no restriction that limits the ZBA to granting only those variances which have received a favorable recommendation from the PZC. This argument is without merit.
Plaintiffs next seem to argue that the ZBA erred because it may have determined that the proposed year-round restaurant operation was not an illegal expansion of a nonconforming use. The plaintiffs, by doing so, have anticipated the claim made in Botchis' brief and by the defendants in oral argument that the ZBA could have found that the extension of the present eight-month use to year-round operation was not an extension of a nonconforming use, and implicitly therefore found that no variance was, in fact, required.
However, the application by Botchis to the ZBA was clearly entitled "Variance Application." The body of the application stated: "The applicant requests the Board to take the following action: `Grant a variance . . . to be allow (sic) to open year round.'" The published notice of the public hearing was to the same effect. The agenda also described the purpose of the public hearing as an application for a variance.
The transcript of the hearing itself refers to the application as one for a variance several times. ROR 21, pp. 2, 19, 22, and 25. The Chairman stated at p. 9, "Is there anyone in favor of this variance? Is there anyone opposed to this variance?" and when closing the hearing on page 25, ". . . (if) there is (sic) no other remarks on this variance, I declare the hearing closed on this variance. . ." Also, the PZC sent a letter to the ZBA objecting to the granting of the application stating: ". . .extending the season (of the restaurant) to year round constitutes a use variance. Use variances are not permitted in the Stonington Zoning Regulations and therefore cannot be allowed through a variance application." ROR 11.
The record of decision and published notice of decision, while not models of clarity, both referred to a granting in part and denial in part of the application for a variance.
The record is replete therefore that the ZBA and the PZC, and the defendant Botchis himself treated the application as one for a variance and not as a rehearing or reinterpretation of the ZBA's January 9, 1990 decision denying the appeal from the cease and desist order. CT Page 9553
Moreover, the ZBA would have been without jurisdiction to hear the applicant if he sought relief other than that described in his application and publicly noticed both prehearing and post hearing. Adequate prehearing and post hearing notices are jurisdictional prerequisites to zoning board hearings. R.B. Kent Son, Inc. v. Planning Commission,21 Conn. App. 370, 378 (1990).
The application, therefore, was one for a variance, which the ZBA granted. Its decision was clearly not a rehearing or reinterpretation of its earlier ruling, otherwise it would have been void.
V. Power to Grant Use Variance
Botchis and the ZBA have alternatively characterized Botchis' application to expand his restaurant's period of operation as a request for a use variance. See ROR #1, #11, and #16.
Stonington Zoning Regulation Section 2.12 provides that "(n)on-conforming uses and bulk may be continued but may not be intensified or expanded in area, height, amount of use, or extent of bulk." (ROR 22, Section 2.12). In seeking a variance to operate an additional four months per year, Botchis seeks to expand the amount of use of his nonconforming restaurant operation.
Stonington Zoning Regulation Section 2.03 provides that "(u)ses permitted or allowed in each District . . . shall be the only uses permitted or allowed. All other uses are hereby prohibited and shall not be permitted by variance. (ROR 22, Section 2.03). (emphasis added). Restaurants are not a permitted use in an RH-10 zone. See ROR 22, Section 3.7.
Connecticut General Statutes Section 8-6 (3) provides that a zoning board of appeals shall have the power and duty
 to determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of CT Page 9554 such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured, provided that the zoning regulations may specify the extent to which uses shall not be permitted by variance in districts in which such uses are not otherwise allowed.
General Statutes Section 8-6 (3). The Stonington Zoning Regulations provide that
 [w]here there is difficulty or unreasonable hardship, but not economic hardship, in the way of carrying out the strict letter of the Zoning Regulations, the Zoning Board of Appeals shall have power in a specific case to vary the application of any bulk provision of the ordinance, if such variance will be in harmony with the general purpose and intent of the ordinance, the Town Plan of Development, and if the public health, safety and welfare will be served and substantial justice done.
 The Zoning Board of Appeals shall provide findings, sustained by two thirds of its membership, that the configuration of the property upon which the action is based is such that its use, under strict interpretation of the regulations for the zone in which the property is located, is unreasonably limited for any and all permitted uses.
(ROR 22, Section 8.11[D]) (emphasis added).
"Bulk" is defined in the Stonington Zoning Regulations as
 The size and shape of buildings and non-building uses; and the physical relationships of their exterior walls or their location to lot lines and other buildings or other walls of the same building, and all open spaces required in connection with a building. Bulk Regulations include regulations dealing with floor area ratio, building height, CT Page 9555 lot area per dwelling unit, lot frontage, lot width, required yards, courts, usable open space, spacing between buildings on a single lot, and length of buildings in a row.
(ROR 22, Section 1.32.12).
Plaintiffs argue that under zoning regulation Sections 8.11(D) and 2.03, the ZBA may only grant bulk variances and cannot grant use variances. See ROR 11. The Court agrees.
The Town of Stonington PZC, through its zoning regulations, has lawfully limited the extent to which uses shall not be permitted by variance in districts in which such uses are not otherwise allowed, as provided by General Statutes Section 8-6 (3). Under Zoning Regulation Section 8.11(D), the ZBA is authorized to grant variances only as to bulk provisions of the zoning ordinances, and may not grant use variances, which are expressly prohibited by Section 2.03. This includes the extension of a nonconforming use. See Section 2.12. The ZBA was without authority to grant Botchis' application to extend the number of months per year that the restaurant may be in operation as a use variance is expressly prohibited by Sections 2.03 and 8.11 of the zoning regulations under the authority of General Statutes Section 8-6 (3).
VI. Intensification of Use
The defendants essentially argue that allowing Botchis to operate his restaurant an additional four months every year would be a legal intensification of the use of the property. The defendants further contend that as Botchis presently operates from March 1 to November 1 of each year, his present use is during a part of all of each season of the year, and therefore is not a substantial increase in the non-conforming use. The plaintiffs, as stated, argue that the expansion to year-round use would be an illegal extension of a non-conforming use of the property in violation of Section 2.12 of the Regulations.
Both sides cite the same cases to support their arguments regarding the increased use.
In Weyls v. Zoning Board of Appeals, 161 Conn. 516
(1971), a nonconforming cabin used part of the year in connection with a summer community was converted to a year-round residence. In Cummings v. Tripp, 204 Conn. 67
(1987), seven cottages rented during the summer were CT Page 9556 winterized and improved to be used for year-round rental. And, in Beerwort v. Zoning Board of Appeals, 144 Conn. 731 (1958), a trailer park used during the summer months was improved so that it could be operated year round. It should be noted that while Weyls and Beerwort involved appeals from cease and desist orders and Cummings involved an action for an injunction and damages, and none involved the granting or denial of a variance, the court held in all three cases that the increased use was an illegal extension of a nonconforming use.
Defendants appear to claim that Weyls, Cummings and Beerwort are distinguishable from the case at hand, because in those three cases, extensive renovations or improvements to the properties were necessary in order to use them year round, while Botchis' restaurant need not be changed in any way. This is a distinction without a difference. Defendants also rely on Planning and Zoning Commission v. Craft, 12 Conn. App. 90; cert. den. 205 Conn. 804 (1987), where the property owner used her home on a part-time, year-round basis, and began to use it year round. The Craft court held that full-time, year-round occupancy was not an illegal enlargement of the nonconforming use, because the property was already used year round, and at most, was an "unmeasurable intensification of an unmeasured nonconforming use." Id, 98. Craft also involved a cease and desist order.
Defendants' reliance on Craft is misplaced because in Craft, the property owner already had a non-conforming, year-round use, and the intensification was of a residential use in a residential zone. In the case at hand, Botchis' non-conforming use was quantified from March 1 to November 1 only, and was a commercial use in a residential zone.
In Weyls, Beerwort and Cummings, the Court uniformly acknowledged that the extension of a nonconforming use over a substantially additional period of the year constitutes an illegal extension of a nonconforming use.
Increasing the period that the property is used from eight months per year to year round, a 50 percent increase, is a substantial increase in use, by any definition of the word substantial.
It is clear that where, as here, the municipality has a zoning regulation which prohibits the expansion of non-conforming uses and use variances, the ZBA lacks authority to grant a variance which will allow the expansion.
In Wells v. Zoning Board of Appeals, 180 Conn. 193
CT Page 9557 (1980), the court held that the board had no authority to grant a variance to extend a nonconforming use, reasoning:
 "The . . . zoning regulations . . . not only expressly prohibit the enlargement of any non-conforming use, they also provide that a non-conforming trailer park shall consist of only those trailer sites which were prepared and usable on the effective date of the regulations. There is nothing in the regulations which gives the board authority to grant a variance to a non-conforming trailer park." Wells, supra, 198.
Similarly, in Johnny Cake, Inc. v. Zoning Board of Appeals,180 Conn. 296 (1980), the owner wanted to replace a non-conforming fire tower with a radio transmitter building. The court stated, at p. 301,
 "It is clear that Sec. 10 of the regulations does not allow the extension of a nonconforming use."
The Court took the position that where the regulations prohibit the extension of a nonconforming use, a nonconforming use may be extended by variance only if necessary to avoid confiscation of the owner's property.
In neither Wells nor Johnny Cake did the court refer to the existence of a zoning regulation which specifically prohibited the extension of a nonconforming use by a variance. Rather, in both cases, the court appeared to base its conclusion that a variance could not be granted on the ground that the regulations prohibited the enlargement of a nonconforming use and on the absence of a regulation permitting the zoning board of appeals to grant a variance extending a nonconforming use. This is in accord with the general policy respecting nonconforming uses. ". . . non-conforming uses should be abolished or reduced to conformity as quickly as the fair interest of the parties will permit `(i)n no case should they be allowed to increase.'" Adolphson v. Zoning Board of Appeals, 205 Conn. 703, 710 (1988). This policy is specifically expressed in the Stonington Zoning Regulations. See Section 2.12.
For the foregoing reasons, the ZBA lacked authority to grant Botchis' application for a use variance. This conclusion is dispositive of the appeal, and it is therefore unnecessary to reach the other issue raised by the plaintiffs. CT Page 9558
Accordingly, the plaintiffs' appeal is sustained.
Teller, J.