ROBERT C. KAESER, JR. *v.* ZONING BOARD OF APPEALS OF THE TOWN OF STRATFORD ET AL.
(14186)

PETERS, C. J., CALLAHAN, GLASS, COVELLO and BORDEN, Js.

Argued February 14—decision released April 30, 1991

*Frederick J. Martin,* for the appellant (plaintiff).

*Kurt M. Ahlberg,* for the appellee (named defendant).

*Arthur M. Field,* for the appellees (defendant Stephen V. Corti et al.).

COVELLO, J. This is an administrative appeal from the granting of a zoning variance. The issues presented are: (1) Within the context of the Stratford zoning regulations (a) does the word "livestock" mean more than one animal or can it mean a single animal as well; (b) can a horse reasonably be considered a "household pet"; and (2) can the intention to stable a "pleasure horse" serve as the basis for the hardship required in order to grant a zoning variance. We conclude that within the context of these regulations, "livestock" as a collective noun can mean a single animal as well as more than one animal and that a horse is not a "household pet." We further conclude that evidence of an intention to stable a "pleasure horse" is inadequate to support a finding of the hardship that must exist as the predicate to the granting of a variance. We therefore reverse the judgment and remand the matter to the trial court with direction to sustain the plaintiff's appeal.

On August 22, 1988, the defendant Stephen V. Corti applied to the named defendant, the Stratford zoning board of appeals (ZBA), for a variance from the operation of § 4.1.5 of the town's zoning regulations as it pertains to his 1.51 acre residential parcel at 545 Peters Lane. Section 4.1.5 prohibits keeping livestock, other than household pets, on any lot less than three acres.[1]

---

[1] Section 4.1 of the Stratford zoning regulations provides in part as follows: "Section 4. ONE-FAMILY RESIDENCE DISTRICTS, RS.

"4.1. USES PERMITTED.

"4.1.1. ONE-FAMILY DWELLINGS.

* * *

"4.1.5. Farming, forestry, truck or nursery gardening, or commercial kennels, *provided that no livestock or poultry except household pets shall be kept on any lot of less than three acres.* No greenhouse over 500 square feet in area shall be located on any lot of less than three acres. *No building in a residence district shall be used for the housing of livestock or poultry or as a commercial kennel unless specifically approved as a special case under section 20 and subject to such conditions and regulations as the commission may impose. . . ."* (Emphasis added.)

The application for a variance stated that if approved, the property would thereafter be used for "stabling a pleasure horse." The application claimed a hardship in that: "We feel 1½ acres is sufficient area to maintain a horse." On November 1, 1988, after conducting the required public hearing, the ZBA granted the petition and voted to "waive the three acre requirement of Section 4.1.5 of the Zoning Regulations to 1.510 acres in order to stable a pleasure horse on property located in an RS-1 District." The ZBA gave no reasons for granting the variance.

The plaintiff, Robert C. Kaeser, Jr., an owner of property within 100 feet of the subject parcel,[2] appealed to the Superior Court claiming, inter alia, that "[t]he applicants have not alleged or demonstrated any hardship." As the ZBA's recording equipment had malfunctioned, the trial court permitted evidence as to what had transpired at the public hearing on Corti's application.[3]

The defendant, Mary Jean Corti, testified that at the public hearing she had told the ZBA members that: she owned a horse; she did not use it for commercial purposes; it was intended for the family's enjoyment; it was presently stabled at another location; and the family's goal was to erect a barn on the Peters Lane premises to serve as a stable for the animal. Corti tes-

[2] General Statutes § 8-8 (b) provides in part: "[A]ny person *aggrieved* by any decision of a [zoning] board [of appeals] may take an appeal to the superior court for the judicial district in which the municipality is located." (Emphasis added.)

General Statutes § 8-8 (a) provides in part: "As used in this section:

"(1) 'Aggrieved person' means a person aggrieved by a decision of a board and includes . . . any person owning land that . . . is within a radius of one hundred feet of any portion of the land involved in the decision of the board."

[3] General Statutes § 8-8 (k) provides in part: "The court shall review the proceedings of the board and shall allow any party to introduce evidence in addition to the contents of the record if (1) the record does not contain a complete transcript of the entire proceedings before the board. . . ."

tified that she further had told the board that she had examined the zoning regulations of other Fairfield county communities such as Fairfield, Westport, Easton and Milford and none of them had minimum acreage requirements governing the maintenance of horses. She also had pointed out to the board that the Peters Lane property virtually abutted the 265 acre Roosevelt Forest that contained "miles and miles of bridle trails." Finally, Corti testified that she had pointed out to the board that a horse was a domestic animal within the meaning of her homeowner's insurance and that she had supplied the board with dictionary definitions that distinguished a "horse" as an animal domesticated by man from "livestock" which is commonly used to describe animals intended for commercial or farming purposes.

The trial court, *Gray, J.,* concluded that "for purposes of zoning regulations, the word 'livestock' is plural in nature and its connotation clearly cannot be restricted to a single animal." This being the case, the trial court concluded: "There is no justiciable issue, given the definitions that govern Section 4.1.5, and the application for a variance must be considered, at best, meaningless, since defendants Corti were not legally required to do anything to keep their pet horse on their property." The trial court rendered judgment dismissing the appeal. The Appellate Court granted the plaintiff's petition for certification to appeal. We thereafter transferred the matter to ourselves pursuant to Practice Book § 4023.

The plaintiff first argues that the trial court improperly concluded that the three acre limitation referred only to situations involving more than one animal. We agree.

There is substantial grammatical authority to the effect that "livestock" always connotes more than one

animal.[4] On the other hand, there is also the grammatical proposition that "livestock," like the words counsel, deer, grouse, reindeer, salmon, sheep, trout, shot, and cannon is a "collective" noun, i.e., singular in form but used with either singular or plural implications. See H. Fowler, Modern English Usage (2d Ed. 1965) pp. 94–95.

We resolve this grammatical ambiguity in favor of the word's "collective" connotation and conclude that the Stratford zoning regulations refer to "livestock" in a generic sense, without a numerical implication. Such an interpretation comports with recognized principles of statutory construction. Pursuant to General Statutes § 1-1 (f), "words importing the singular number may extend and be applied to several persons or things, and words importing the plural number may include the singular." See also 2A J. Sutherland, Statutory Construction (4th Ed. Sands) § 47.34.

Further, it seems scarcely likely that the exception for "household pets" contained within the same phrase could mean that two or more cats, dogs or canaries within a household would be an acceptable exclusion from the three acre limitation but a single cat, a single dog or a single canary within a household would not be similarly permitted. " '[S]tatutes must be construed as a whole' "; *Hartford Principals' & Supervisors' Assn.* v. *Shedd,* 202 Conn. 492, 506–507, 522 A.2d 264 (1987), quoting *Zoning Board of Appeals* v. *Freedom of Information Commission,* 198 Conn. 498, 505,

---

[4] "[L]ivestock: animals of any kind kept . . . for use or pleasure; *esp:* meat and dairy cattle and draft animals—opposed to dead stock." (Emphasis added.) Webster's Third New International Dictionary. "Livestock. 1. Domestic animals in general, horses, cattle, swine, etc." (Emphasis added.) Craigie & Hulbert's Dictionary of American English. "Livestock. 1. Domestic animals generally; animals of any kind kept or dealt in for use or profit." (Emphasis added.) Oxford New English Dictionary; see also *Zoning Commission* v. *Grandieri,* 3 Conn. Cir. Ct. 71, 208 A.2d 357 (1964).

503 A.2d 1161 (1986); "with a view toward reconciling [their] separate parts in order to render a reasonable overall interpretation." *University of Connecticut Chapter, AAUP* v. *Governor,* 200 Conn. 386, 399, 512 A.2d 152 (1986); see also *Donohue* v. *Zoning Board of Appeals,* 155 Conn. 550, 557, 235 A.2d 643 (1967). A municipal ordinance "is subject to the same canons of construction as are applied to state statutes." *Blue Sky Bar, Inc.* v. *Stratford,* 203 Conn. 14, 19–20 n.7, 523 A.2d 467 (1987); *Aaron* v. *Conservation Commission,* 183 Conn. 532, 537, 441 A.2d 30 (1981); see 1A J. Sutherland, supra, § 30.06.

The Cortis argue, however, that even if the trial court's numerical rationale should fail, the three acre limitation is still inapplicable to this situation because the horse in question was a "household pet" and was therefore excluded from the operation of § 4.1.5. We disagree.

Confronted again with ambiguous language that has many possible meanings, we draw upon the proposition that legislation is to be interpreted so as to give meaning to every word. Specifically, the word "household," here an adjective modifying the word "pets," connotes to us an animal reasonably capable of dwelling within a household, presumably under the same roof and living as a member of a family. See Webster's Third New International Dictionary. Because a horse, by reason of its size and other obvious considerations, is unlikely to dwell within a house, we conclude that the phrase "household pet" as set forth in § 4.1.5 means something other than such an animal. The three acre limitation therefore applies to the Cortis' horse.

A determination that the trial court's reason for denial of the appeal was incorrect does not, however, end the analysis. " 'This court is not required to reverse

a ruling of the trial court which reached a correct result, albeit [from] a wrong [procedural posture]. *Favorite* v. *Miller,* [176 Conn. 310, 317, 407 A.2d 974 (1978)].' " *Pinsky* v. *Statewide Grievance Committee,* 216 Conn. 228, 237, 578 A.2d 1075 (1990). "A judgment responsive to the issues and supported by the facts should stand, even if the court's method of reaching its decision might be questionable." *Malone* v. *Steinberg,* 138 Conn. 718, 723, 89 A.2d 213 (1952). We are required, therefore, to examine the merits of the variance granted to the Cortis by the ZBA.

Section 21.1[5] of the Stratford zoning regulations authorizes the ZBA to vary the application of the town's zoning regulations "solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such regulations would result in exceptional difficulty or unusual

---

[5] Section 21 of the Stratford zoning regulations provides: "21.1 DETERMINATION OF BOARD OF ZONING APPEALS.

"The board of zoning appeals shall have the power to determine and vary the application of these regulations except section 15 and those uses classified as special cases or unnamed uses in the manner provided by state statute, in harmony with their purpose and intent and with due consideration for conserving the public health, safety, convenience and welfare, solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured. Such variance may be for periods as determined by the board of zoning appeals.

"Before making such determination or variance the board of zoning appeals must make a written finding in the minutes of each case giving in detail: (a) The special circumstances which create the hardship for the particular parcel of land and which do not apply to other parcels in the district; (b) that the hardship did not exist when the applicant became an interested party and was not created by any act of the applicant, and (c) that the variance allowed was the minimum necessary to relieve the hardship. A copy of each variance shall be filed in the land records of the town in the town clerk's office."

hardship . . . ." This language is substantially similar to the comparable provisions of General Statutes § 8-6 (3).[6]

"A variance is authority granted to the owner to use his property in a manner forbidden by the zoning regulations. . . . The power of the board to grant a variance should be used only where a situation falls fully within the specified requirements. . . . Thus, the power to grant a variance should be sparingly exercised." *Allen* v. *Zoning Board of Appeals,* 155 Conn. 506, 510, 235 A.2d 654 (1967). "An applicant for a variance must show that, because of some peculiar characteristic of his property, the strict application of the zoning regulation produces an unusual hardship, as opposed to the general impact which the regulation has on other properties in the zone." *Dolan* v. *Zoning Board of Appeals,* 156 Conn. 426, 430, 242 A.2d 713 (1968). "The hardship which justifies a board of zoning appeals in granting a variance must be one that originates in the zoning ordinance . . . and arises directly out of the application of the ordinance to circumstances or conditions beyond the control of the party involved." *Whittaker* v. *Zoning Board of Appeals,* 179 Conn. 650, 658, 427 A.2d 1346 (1980). "Where the claimed hardship arises from the applicant's voluntary act, however, a zoning board lacks the power to grant a variance." Id.

---

[6] General Statutes § 8-6 provides in part: "POWERS AND DUTIES OF BOARD OF APPEALS. The zoning board of appeals shall have the following powers and duties . . . (3) to determine and vary the application of the zoning . . . regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such . . . regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured . . . ."

The hardship here alleged did not arise out of "circumstances or conditions beyond the control of the party involved." The Peters Lane residence complied with the Stratford zoning regulations until the Cortis, through their voluntary act, sought to stable a horse upon the premises. It is evident from the application itself, i.e., "[w]e feel 1½ acres is sufficient area to maintain a horse," and from Mary Jean Corti's testimony to the effect that other Fairfield county communities did not have minimum acreage requirements governing the stabling of horses, that the Cortis were acting as earnest advocates for the townwide modification of the three acre limitation and were not pursuing relief from a hardship that was unique to their property. "[A variance] should not be used to accomplish what is in effect a substantial change in the uses permitted in a residence zone. That is a matter for the consideration of the zoning commission." *Heady* v. *Zoning Board of Appeals,* 139 Conn. 463, 468, 94 A.2d 789 (1953). "The power to repeal, modify or amend a zoning ordinance rests in the municipal body which had the power to adopt the ordinance, and not in the zoning board of appeals." *Greenwich Gas Co.* v. *Tuthill,* 113 Conn. 684, 694, 155 A. 850 (1931). We conclude that there is simply not the factual predicate within this record to support the ZBA's granting of a variance.

The judgment is reversed and the matter is remanded with direction to render judgment sustaining the plaintiff's appeal.

In this opinion the other justices concurred.