[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter comes before this court on appeal from a decision of the Zoning Board of Appeals of the Town of Bethel. The complaint is dated July 8, 1991.
On March 15, 1993, Judge McGrath held a hearing. On August 30, 1993, a memorandum of decision was filed by Judge McGrath. The plaintiff never agreed to the one hundred twenty (120) day time limit required by section 51-183b of the Connecticut General Statutes. CT Page 512
On September 3, 1993, a motion to vacate judgment and/or as motion for a new trial was filed by the plaintiff and the motion was granted by Judge Stodolink on September 6, 1994.
The matter was reassigned for a hearing on January 9, 1995 before, Judge Mihalakos.
The court found aggrievement.
The court further reviewed the return of record and the briefs filed by counsel of record. Further, the court reviewed the memorandum of decision of Judge McGrath dated August 30, 1993.
The court concludes that the record sufficiently supports the decision of the Zoning Board of Appeals of the Town of Bethel and it adopts the reasoning and decision of Judge McGrath. It would serve no useful purpose, except to glorify form over substance, to repeat the memorandum of decision of Judge McGrath. The court, therefore, will adopt by reference that decision by attaching it herewith as Exhibit A.
The plaintiff's appeal is dismissed.
Mihalakos, J.
EXHIBIT A
No. 30 62 82 JOHN D. WALKER, ET AL. SUPERIOR COURT v. JUDICIAL DISTRICT OF ZONING BOARD OF APPEALS OF THE DANBURY TOWN OF BETHEL, ET AL. AUGUST 30, 1993
MEMORANDUM OF DECISION
Plaintiffs, John and Ellen Walker ("Walkers") and Sheldon and Zina Rosenbaum ("Rosenbaums"), as abutting landowners, appeal from a decision of the defendant, Zoning Board of Appeals of the Town of Bethel ("ZBA"), granting defendant, James B. Mannion's application for a variance of section 118-24F(1) of the zoning code ("Code") of the Town of Bethel. Pursuant to General Statutes, Sec. 8-8, the plaintiffs appeal from the decision of the ZBA arguing that defendant Mannion's alleged hardship is CT Page 513 self-created and is an otherwise insufficient basis on which to grant a variance.
I FACTS
James B. Mannion, Trustee, applied for a variance from section 118-24F(1) of the Code on April 16, 1991. (Return of Record ("ROR"), Item A.) Upon acceptance of the application, the ZBA scheduled a public hearing for May 21, 1991. (ROR, Item B.) The ZBA conducted a public hearing on the application for variance on May 21, 1991 (ROR, Item H, p. 1), at which time the hearing was ordered continued to June 18, 1991. (ROR, Item H, pp. 3, 4; ROR, Item I.) At both hearings, the plaintiffs were in attendance and presented oral and documentary evidence in opposition to Mannion's application. (ROR, Item H; ROR, Item J.) At the conclusion of the public hearings, the ZBA voted to grant the variance. (ROR, Item J.) On June 26, 1991, the decision of the ZBA to grant the variance was published in a newspaper of general circulation. (ROR, Item N.) The decision gives no indication of the reasons the ZBA granted the variance. Plaintiffs commenced this appeal on July 8, 1991.
The record reveals that defendant Mannion is the owner of a 2.0518 acre lot ("Property") located at the intersection of Country Way, Dittmar Road and Chestnut Ridge Road in the Town of Bethel. (ROR, Item H, p. 1.) The Property is located in a "R-80" zone which requires a minimum of 80,000 square feet for a lot and minimum lot frontge [frontage] of 160 square feet. (ROR, Item A; ROR, Item O.) The Code requires that a building lot for a single family dwelling contains a "minimum square dimension" of 140 feet on each side behind a 50 foot front yard. (ROR, Item O.) The application for variance seeks a reduction of the minimum square requirement from 140 feet to 137 feet. (ROR, Item A.)[1]
From 1964 to March 16, 1986, the Property was taxed as a separate building lot. (ROR, Item H, pp. 4-6.) On May 16, 1986, DiMatteo Construction Company became the owner of the Property and adjoining property. The adjoining property later became the subject of a subdivision. (ROR, Item H, pp. 5, 6.) Prior to December 1986, there was no setback requirement applicable to the northerly boundary of the Property as Country Way did not exist (ROR, Item J, p. 2; ROR, Item D), and the Property was in conformity with the Code. (ROR, Item H, p. 3.) The Property was subject to the 50 foot setback requirement of the Code only as to its easterly boundary with Chestnut Ridge Road. (ROR, Item J, p. CT Page 514 2.)
A 57 acre subdivision of adjoining property to the north and east of the Property was approved and recorded on December 9, 1986. (ROR, Item D.) The Bethel Planning and Zoning Commission placed two conditions on the creation of the new subdivision development prior to approval, the creation of a new street, Country Way (ROR, Item H, pp. 2, 15), and a safe intersection at Chestnut Ridge Road with the new Country Way (ROR, Item J, p. 2).
DiMatteo, the owner of the Property and developer of the adjoining subdivision, encountered difficulty in meeting the two conditions. Surveyor David L. Ryan maintained on the record that property lines restricted the placement of Country Way, that there was a "lack of return" and that there was a need for "good transition of the road [Country Way] into Chestnut Ridge Road." (ROR, Item J, p. 2.) In an attempt to solve the problem of creating a safe intersection while maintaining a 50 foot right of way required by Town regulations for foot pavement and shoulders (ROR, Item J, pp. 2, 3); to get "access for slope rights" (ROR, Item H, p. 1); and to maintain the amount of acreage in the Property, an equal transfer of land was made. (ROR, Item H, pp. 1, 2.) The equal transfer of land entailed adding to the northerly portion of the Property, by taking land from the westerly portion of the Property. (ROR, Item H, pp. 1, 2.) However, with the creation of Country Way to the north, the Property became subject to corner lot regulations. (ROR, Item H, p. 2.)
At some time in October 1990, an intervening purchaser of the Property, Joseph F. Connolly, was denied a building permit because a new zoning enforcement officer, Mr. Danzo, ruled that the Property, now a corner lot, could not contain the required minimum square of 140 feet. (ROR, Item J, p. 3.)
The record indicates that prior to October 1990, where a corner lot with a pre-existing structure was created by the introduction of a subdivision, the policy of the zoning enforcement office was to utilize the original setback lines and to fit the minimum square in the property in relation to original setback lines which existed prior to the inclusion of the new roadway for the subdivision. (ROR, Item J, pp. 3, 4, 8.) The record shows that this policy of allowing in new corner properties was quite common and may have occurred with properties which abutted the subdivision in question. (ROR, Item J, pp. 3, CT Page 515 4, 8.) However, the record contains some ambiguity as to whether the zoning enforcement office, prior to October 1990, applied the corner lot exception to nonconforming properties on which no structure existed, as in the instant appeal.
Following October 1990, there was a complete change of policy regarding the interpretation of the minimum square and setback requirements on corner lots by the new zoning enforcement officer. (ROR, Item J, p. 5.)
II JURISDICTION
In order to take advantage of a statutory right of appeal from a decision of an administrative agency, there must be strict compliance with the statutory provisions which create the right.Simko v. Zoning Board of Appeals, 206 Conn. 374, 377,538 A.2d 202 (1988). These provisions are mandatory and jurisdictional; failure to comply may subject the appeal to dismissal. Id.; see also Capalbo v. Planning Zoning Boardof Appeals, 208 Conn. 480, 485, 547 A.2d 528 (1988).
Timeliness
General Statutes, Sec. 8-8(b) provides that a zoning appeal shall be commenced fifteen days from the date that the notice of the decision is published. In the present case, the decision of the ZBA was published on June 26, 1991 (ROR, Item N), and the appeal was commenced with service upon the defendants on July 8, 1991. Accordingly, it is found that this appeal was commenced within the statutorily mandated period.
Service of Process
General Statutes, Sec. 8-8(b) provides, in relevant part, that an appeal "shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." Section 8-8(e) further provides that "[s]ervice of legal process for an appeal . . . shall be directed to a proper officer and shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality." Section 8-8(f) states that service of process "shall also be made on each person who petitioned the board in CT Page 516 the proceeding, provided his legal rights, duties and privileges were determined therein."
The sheriff's return indicates that the town clerk of Bethel, the chairman of the Bethel ZBA, and the applicant, James B. Mannion, Trustee, were served with a true and attested copy of the original writ and summons and complaint on July 8, 1991.[2]
Accordingly, it is found that plaintiffs have complied with the statutory service of provisions.
Aggrievement
Aggrievement is a jurisdictional matter and it is a prerequisite to maintaining an appeal. Winchester WoodsAssociates v. Planning Zoning Commission, 219 Conn. 303,307, 592 A.2d 953 (1991). The question of aggrievement is essentially one of standing. DiBonaventura v. Zoning Boardof Appeals, 24 Conn. App. 369, 373, 573 A.2d 1222 (1991). Under General Statutes, Sec. 8-8(a)(1), an "`aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of land involved in the decision of the board."
The Walkers allege that they are owners of property at 4 Dittmar Road which abuts the southerly portion of the Property (ROR, Item H, p. 6.) The Rosenbaums allege that they are owners of property at 36 Country Way which abuts the easterly boundary of the subject property. (ROR, Item H, p. 15.) Accordingly, as the court finds that the plaintiffs are owners of abutting properties, the plaintiffs are aggrieved persons pursuant to General Statutes, Sec. 8-8(a).[3]
 III SCOPE OF REVIEW
A trial court may grant relief in an appeal from a decision of an administrative authority only where the authority has acted illegally, arbitrarily, or has abused its discretion. Raybestos-Manhattan, Inc. v. Planning ZoningCommission, 186 Conn. 466, 470, 442 A.2d 65 (1982). "The burden of proof is on the plaintiff to demonstrate that the board acted improperly." Spero v. Zoning Board of Appeals,217 Conn. 435, 440, 586 A.2d 590 (1991); Adolphson v. ZoningBoard of Appeals, 205 Conn. 703, 707, 535 A.2d 799 (1988). Where the zoning authority has not provided the reasons for its decision, the court must search the record to find a CT Page 517 basis for the commission's decision. Double I LimitedPartnership v. Plan Zoning Commission, 218 Conn. 65, 73,588 A.2d 624 (1991). The court is simply to determine whether the record supports the conclusions reached by the agency. Primerica v. Planning Zoning Commission,211 Conn. 85, 96, 558 A.2d 646 (1989).
IV DISCUSSION
The plaintiffs argue that the actions of a prior owner of the Property, DiMatteo Construction Company, in altering and otherwise manipulating the Property in order to receive subdivision approval for a 57 acre parcel of property, were intentional, and therefore not the proper basis for a claim of hardship. Plaintiffs cite Booe v. Zoning Board ofAppeals, 151 Conn. 681, 202 A.2d 245 (1964); Abel v. ZoningBoard of Appeals, 172 Conn. 286, 374 A.2d 227 (1977); andJohnny Cake, Inc. v. Zoning Board of Appeals, 180 Conn. 296,429 A.2d 467 (1980) as support for this argument. Further, the plaintiffs assert that at the time the subdivision was approved, the subject property was known to be nonconforming with the applicable zoning regulation. (ROR, Item J, pp. 6, 7.) The Code regulation governing corner lots was extant at the time of the subdivision approval. (ROR, Item J, p. 5.) Therefore, the plaintiffs argue that prior to the planning and zoning commission's decision to place conditions on the subdivision approval, the developer could have avoided the creation of the corner lot Property by simply including the Property in the subdivision itself. (ROR, Item H, pp. 12, 24.) The plaintiffs note that although considered by the developer and possible to do so, DiMatteo Construction Company did not include the Property in the 57 acre subdivision. (ROR, Item H, pp. 17, 18.) The plaintiffs argue that the developer DiMatteo, who was in control of the conditions and circumstances that created the nonconforming lot, created the hardship by not including the Property within the subdivision plan.
Secondly, the plaintiffs argue that defendant Mannion originally sought a variance on the basis that a hardship was created when the surveyor who rearranged the Property to accommodate the subdivision requirements "made a mistake." (ROR, Item H, p. 4.) Assuming, arguendo, that such a mistake was made, the plaintiffs argue that such does not provide a basis for a hardship claim as the surveyor was an agent of CT Page 518 the owner and therefore any hardship was self-created pursuant to the reasoning of Pollard v. Zoning Board ofAppeals, 186 Conn. 32, 438 A.2d 1186 (1982).
Finally, plaintiffs, relying on Grillo v. Zoning Boardof Appeals, 206 Conn. 362, 537 A.2d 1030 (1988), and Carlsonv. Zoning Board of Appeals, 158 Conn. 86, 255 A.2d 841
(1969), claim that the hardship alleged by the defendant is purely financial and therefore insufficient to support a variance from the zoning regulations.
The ZBA argues that the granting of the variance complies with the requirements of General Statutes, Sec. 8-6
in that the variance does not substantially affect the comprehensive zoning plan and that strict adherence to the strict letter of the zoning ordinance causes unusual hardship unnecessary to the carrying out of the general purposes of the zoning plan. See Smith v. Zoning Board of Appeals,174 Conn. 323, 326, 387 A.2d 542 (1978). The only issue in the present case, the ZBA argues, is whether the hardship in question is self-induced. The ZBA's argument that the hardship is not self-induced is twofold. First, the ZBA, relying on Smith v. Zoning Board of Appeals, supra, claims that the developer had no control over the conditions and circumstances surrounding the change in zoning enforcement officers and accompanying change in the interpretation of the Code regulations. Secondly, similar to Whittaker v. ZoningBoard of Appeals, 179 Conn. 650, 427 A.2d 839 (1980), the Property was impacted by the extension of Country Way to Chestnut Street which was a condition placed on the subdivision development. The ZBA asserts that the impact caused the Property to become a corner lot and required it to meet zoning requirements that previously had no application.
Defendant Mannion argues that the present hardship is not self-created but arises from the actions of the zoning enforcement officer and the Bethel Planning and Zoning Commission. The defendant, citing Pollard v. Zoning Board ofAppeals, supra, 39, asserts that changing personnel at the Town Hall and shifting interpretation of the new zoning enforcement officer are circumstances or conditions beyond the control of the property owner.
Alternatively, Mannion argues that the planning commission's binding decision to approve a subdivision plan CT Page 519 upon a particular layout of streets is a hardship beyond the control of the new owner. Mannion asserts that the actions of the planning and zoning commission in approving the road known as Country Way and the action of the Town in accepting the road are beyond the control of the applicant or applicant's predecessors and constitute adequate hardship pursuant to the reasoning of Whittaker v. Zoning Board ofAppeals, supra.
A zoning board of appeals has the power to grant a variance. General Statutes, Sec. 8-6(3). "`A variance is authority granted to the owner to use his property in a manner forbidden by the zoning regulations. . . .'" (Citation omitted.) Kaeser v. Zoning Board of Appeals,218 Conn. 438, 445, 589 A.2d 1229 (1991). Two basic conditions must be satisfied in order for a variance to be granted: (1) the variance is shown not to substantially affect the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning regulations is shown to cause unusual hardship which is unnecessary to the carrying out of the general purpose of the zoning plan. Adolphson v. ZoningBoard of Appeals, supra, 709.
"`It is well settled that the hardship must be different in kind from that generally affecting properties in the same zoning district, and must arise from circumstances or conditions beyond the control of the property owner.'" (Citation omitted.) Pollard v. Zoning Board of Appeals, supra, 39. Financial loss is not a sufficient reason for granting a variance. Hyatt v. Zoning Board of Appeals,163 Conn. 379, 383, 311 A.2d 77 (1972).
There is a distinction between a situation where an applicant or his predecessor in interest creates a hardship and a situation where the hardship originates in the zoning regulations. Adolphson v. Zoning Board of Appeals, supra, 712. In the first instance, the board does not have the authority to grant a variance. Id. If, however, the hardship arises by virtue of the enactment of a zoning ordinance, the board may be justified in granting the variance. Id., 712, 713. Also, where the hardship involved "`arises as the result of a voluntary act by one other than the one whom the variance will benefit, the board may, in sound exercise of its liberal discretion, grant the variance.'" Whittaker v. Zoning Board of Appeals, supra, CT Page 520 657-658; Belknap v. Zoning Board of Appeals, 155 Conn. 380,384, 232 A.2d 922 (1967).
 A. Whether the actions of the Bethel Planning and Zoning Commission and the Town of Bethel in approving and accepting Country Way constitutes a hardship.
The plaintiffs do not contend that the granting of a variance will substantially affect the comprehensive zoning plan nor do the plaintiffs brief this issue. Therefore, it is found that upon appeal the trial court need not address this issue. See also Practice Book, Sec. 285A.
Both the ZBA and Mannion argue that the facts in the instant appeal give rise to a hardship pursuant to Whittakerv. Zoning Board of Appeals, supra. Whittaker involved the subdivision of a 1.79 acre parcel of land into two, 3/4 acre lots, and the extension of an existing road, Quail Trail, through the parcel to meet another existing road, Foster Avenue. Id., 651. The Town zoning regulations set a minimum lot size of one acre for the zone in which the parcel was located. Id., 652. The approval of the subdivision plan was conditioned on the extension of Quail Trail through the divided parcel to Foster Avenue. Id. The subject property was located between Quail Trail, a dead end in the so-called Lagana subdivision, and Foster Avenue. Id. The Whittaker
record discloses that it had been the intention of the planning and zoning commission to extend that section of Quail Trail to connect with Foster Avenue when it originally approved the Lagana subdivision in 1969. Id. Therefore, the Lagana subdivision was not finally approved by the planning and zoning commission until the subdivision map provided for the future extension of Quail Trail to Foster Avenue. Id.
The plaintiffs in Whittaker, abutting landowners, argued that the owner demonstrated no true hardship because the undivided lot conformed to the lot size regulation for that zone, and because the Town did not take the property by its power of eminent domain to construct the road, no hardship had been shown to exist. Id., 653, 654.
The Whittaker court held that the action of the planning and zoning commission, in conditioning subdivision approval on the creation of a road, was beyond the control of the CT Page 521 property owner, and therefore was a hardship arising out of the zoning ordinance. Id., 660, 661.
The chief distinctions between Whittaker and the instant appeal are (1) the dedication of Country Way did not reduce the area of the Property, (2) the alteration of the dimensions of the Property occurred prior to subdivision approval, and (3) the Property is not contained within the subdivision. Although these distinctions exist, it is significant that both Whittaker and the present case involve the extension of existing dead end streets pursuant to the directive of a planning and zoning commission which conditioned the approval of a subdivision plan upon the creation of a through street.
General Statutes, Sec. 8-25(a) requires that "[n]o subdivision of land shall be made until a plan for such subdivision has been approved by the commission." The exercise of subdivision controls is an exercise of the police power. Whittaker v. Zoning Board of Appeals, supra, 660. "One who chooses to engage in subdividing land by that decision thus chooses also to be subject to the reasonable regulation of the local planning commission. . . . Therefore, . . . [there is] no practical difference, where hardship is concerned, between taking a parcel of land by the state or municipality, and a planning commission's binding decision to approve a subdivision plan only upon a particular layout of streets. A person choosing to subdivide land is no less restricted in his use of that land by the commission's action than a property owner is by the action of the condemning authority; the hardship imposed upon him due to the restricted use is no less real." Id., 661
It is found that the creation of Country Way and its safe intersection with Chestnut Ridge Road, which necessitated the alteration of the Property from a buildable lot into a nonconforming lot to accomplish those ends, cannot be said to be the voluntary act of the defendant Mannion or DiMatteo, the predecessor in interest. It is further found that the actions of the planning and zoning commission were circumstances or conditions beyond the control of the property owner. Pollard v. Zoning Board of Appeals, supra, 39. Therefore, the hardship alleged by the applicant arises out of the zoning ordinance itself. See Adolphson v. ZoningBoard of Appeals, supra, 712-713. Accordingly, the record CT Page 522 indicates that an adequate ground exists for the ZBA to grant a variance to section 118-24F(1) of the Code.
 B. Whether the applicant Mannion suffers a financial disadvantage which is insufficient to support a variance from the zoning regulations.
"Disadvantage in property value or income, or both, to a single owner of property, resulting from application of zoning restrictions, does not, ordinarily, warrant relaxation in his favor on the ground of practical difficulty or unnecessary hardship. " Grillo v. Zoning Board of Appeals,206 Conn. 362, 369, 537 A.2d 1030 (1988), quoting Thayer v.Board of Appeals, 114 Conn. 15, 22, 157 A.2d 273 (1932). An applicant's financial hardship, of itself, is not sufficient to warrant the granting of a variance. Carlson v. ZoningBoard of Appeals, 158 Conn. 86, 89, 255 A.2d 841 (1960). "Financial considerations are relevant only in those exceptional situations where a board could reasonably find that the application of the regulations to the property greatly decreases or practically destroys its value for any of the uses for which it could reasonably be put and where the regulations, as applied, bear so little relationship to the purposes of zoning that, as to a particular premises, the regulatons [regulations] have a confiscatory or arbitrary effect." (Citations omitted.) Id., 89-90.
The present case differs from Grillo and Carlson
in that the basis for hardship is not a solely financial disadvantage. The record indicates an alternative basis for hardship in the action of the planning and zoning commission conditioning the subdivision approval. While an inability to build on property or to otherwise exploit property is a financial hardship, pursuant to Grillo and Carlson, it is noted that in the present case the strict application of the zoning regulations prevents the defendant Mannion or any subsequent owners of the Property from utilizing the Property to build a single family dwelling as allowed in a "R-80" zone. (ROR, Item O.) It is found that the strict application of setback and minimum square requirements will effectively deprive the applicant of the use of the property and may constitute a confiscatory application of a zoning regulation. See Carlson v. Zoning Board of Appeals, supra, 90. Therefore, it is found that the record provides an CT Page 523 alternative ground by which the ZBA could have reasonably concluded that the granting of a variance to section 118-24F(1) of the Code to defendant Mannion was proper.
It is found that the record supports the conclusion of the ZBA to grant a variance to the applicant Mannion. It is also found that the plaintiffs have failed to demonstrate that the ZBA acted illegally, arbitrarily, or in an abuse of its discretion in issuing a variance to Mannion. Therefore, the plaintiffs' appeal should be dismissed and is dismissed.
McGrath, J.