[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The named plaintiffs, Irving and Leila Beck, appeal the decision of the defendant, Zoning Board of Appeals of the Town of New Canaan (Board), upholding a cease and desist order issued by the defendant Daniel A. Foley, Zoning Enforcement Officer, which ordered the plaintiffs to "cease and desist said commercial usage of the property and to return it to its legal status as a two family house in accordance with the `B' Residence Zone Regulations."
The Board acted pursuant to General Statutes § 8-6. The CT Page 8491 plaintiffs appealed pursuant to General Statutes § 8-8.
The parties agree that the decision of the Board to uphold the cease and desist order was published in The New Canaan Advertizer on September 15, 1994. (Complaint, par. 11, Answer, par. 11.) On September 26, 1994, the plaintiffs served process on the Town of New Canaan and the Board, by service upon the Chairman of the Board, Edwin Deadrick, and on September 27, 1994, the plaintiffs served process on Foley. (Sheriff's Return.) The plaintiffs filed their appeal on October 4, 1994. The defendants filed their answer, the return of record and the supplemental return of record, on November 30, 1994. Also on January 18, 1995, the plaintiffs filed their brief. On February 17, 1995, the defendants filed their brief.
FACTS
The plaintiffs are the owners of a two story building located at 46 Main Street, New Canaan, Connecticut. (Plaintiffs' Exhibit 1.) It is undisputed that the plaintiffs' property is located in the "B" Residence Zone. (Complaint, par. 4, Answer, par. 4.) It is further undisputed that in 1964, the plaintiffs were granted a variance to Section 4.1 of the New Canaan Zoning Regulations. (Complaint, par. 4, Answer, par. 4.) The 1964 variance permitted "offices for physicians, or surgeons, or dentists, or architects, or engineers, or lawyers, or real estate agents, or insurance agents only. Furthermore each of these offices may not employ more than a total or three persons. These three employees are, of course, in addition to the surgeon or whoever it may be who rents the particular office. All of these conditions are to apply to this building and the appeal is granted for this building only as long as the property and house are retained in the ownership of Irving H. Beck." (Return of Record [ROR], Item 16.)
The plaintiffs were granted five subsequent variances in 1966, 1970, 1974, 1983 and 1985. (Complaint, par. 6, Answer, par. 6.) The variance granted by the Board in 1966 permitted an "increase in office employees." (ROR, Item 17.) The variance granted by the Board in 1970 permitted "an Engineer and three employees." (ROR, Item 18.) In 1974, a variance was granted by the Board "to allow rental of [the] office, formerly occupied by [a] physician, to consultant firm International Resource Development, Inc. subject to limit of number of employees previously allowed as per variance granted on October 19, 1964." (ROR, Item 19.) In 1983, the Board granted a variance "to allow occupancy by the management consultant CT Page 8492 firm of Reid, Thunberg Company, Inc. for a period of five years." (ROR, Item 20.) Finally in 1985, the Board granted a variance "to allow occupancy by a management consultant firm" containing the conditions that "[o]ccupancy [was] limited to [the] firm of Corporate Development International and to the length of the lease between Mr. Beck and that company, 3 years and 3 year option." (ROR, Item 21.)
In 1990, the Board denied the plaintiffs' application for a variance modifying the 1964 variance in order to remove the condition contained therein relating to the continued ownership of the property by Mr. Beck, which the plaintiffs appealed to this court. (ROR, Item 4.) By decision dated November 20, 1991, this court, Ryan, J., dismissed the plaintiffs' appeal and held that the 1964 variance "cannot be upheld" because it was conditioned on individual ownership. (ROR, Item 4.) Furthermore, the plaintiffs' petition for certification to appeal was denied by the Appellate Division on January 22, 1992. (ROR, Item 4.)
The present "commercial" tenants that occupy the first floor of the plaintiffs' property are Dr. Daniel Evan Mason and Corporate Development International, Inc. (ROR, Items 12 and 13.) On May 18, 1994, Foley issued the cease and desist order now at issue which was directed to the plaintiffs "continuation of commercial usage at 46 Main Street, in a `B' Residence Zone" and which ordered the plaintiffs to "cease and desist said commercial usage of the property and to return it to its legal status as a two family house in accordance with the `B' Residence Zone Regulations." (ROR, Item 1.) It is undisputed that the plaintiffs timely appealed the cease and desist order to the Board. (Complaint, par. 10, Answer, par. 10.) Hearings were held by the Board on August 1, 1994 and September 12, 1994. (ROR, Items 27 and 32.)
On September 12, 1994, the Board denied the plaintiffs' appeal "in that the applicant had not demonstrated the Cease and Desist Order by the Zoning Inspector was improperly issued because: 1. The parcel, located at 46 Main St., is zoned "B" Residence and commercial/business enterprises are prohibited in that Zone. 2. Since Judge Ryan overturned the original 1964 Variance, no such variance permission now exists. 3. Subsequent Variances permitting additional business uses were merely extensions of the original 1964 Variance and therefore disappeared with Judge Ryan's decision. A review of the MINUTES of those subsequent Variance applications shows that the Board either directly referred back to the 1964 Variance, or recognized the existence of that Variance in its CT Page 8493 discussion of, and Action on, the subsequent applications." (ROR, Item 33.)
Now, the plaintiffs challenge the decision of the Board in upholding the cease and desist order on the grounds that the Board "acted improperly, illegally, arbitrarily, and in abuse of its discretion" in that: it denied the appeal despite the existence of the other variances which ran with the land and permitted commercial usage of the plaintiffs' property; it did not recognize the validity of the variances granted to the plaintiffs, regardless of the illegal condition of continued personal ownership and that the application of General Statutes § 8-6(b) results in the validation of the 1964 variance despite the illegal condition, it prohibited the plaintiffs from using their property for commercial use permitted by the applicable zoning regulations, it based its decision on information outside of the record, and it did not have sufficient information before it to sustain the position of the zoning enforcement officer.
The defendants argue that the cease and desist order was properly issued because § 60-4.1 of the New Canaan Zoning Regulations does not permit use by a nonresident physician or a corporate management consulting firm, and that the 1964 variance has been held to be invalid and the current uses do not comply with any of the remaining variances. The defendants further argue that the cease and desist order is valid in that it does not deny "all" commercial use of the plaintiffs' property, just the existing commercial uses.
JURISDICTION
In order to take advantage of a statutory right to appeal from a decision of a local zoning board, there must be strict compliance with the statutory provisions that create the right. Simko v.Zoning Board of Appeals, 206 Conn. 374, 377, 538 A.2d 202 (1988). These provisions are mandatory and jurisdictional, accordingly, the failure to comply subjects the appeal to dismissal. Id.
Aggrievement
General Statutes § 8-8(b) provides that "any person aggrieved by any decision of a board may take an appeal to the superior court . . . ." "Pleading and proof of facts that constitute aggrievement are essential prerequisites to the trial court's subject matter jurisdiction over an administrative appeal." New EnglandCT Page 8494Rehabilitation Hospital, Inc. v. CHHC, 226 Conn. 105, 120,627 A.2d 1257 (1993). "The burden of demonstrating aggrievement rests with the plaintiff." Id., 301. At the hearing on May 23, 1994, the court found that the plaintiffs are aggrieved.
Timeliness
General Statutes § 8-8(b) requires that the "appeal shall be commenced by service of process . . . within fifteen days from the date that notice of the decision was published as required by the general statutes." As stated above, notice of the Board's decision was published on September 15, 1994, and process was served on all defendants by September 27, 1994. The plaintiffs' appeal is timely.
SCOPE OF JUDICIAL REVIEW
"`In reviewing the actions of a zoning board of appeals we note that such a board is endowed with a liberal discretion, and its [actions are] subject to review by the courts only to determine whether [they were] unreasonable, arbitrary or illegal. . . . The burden of proof to demonstrate that a board acted improperly is upon the party seeking to overturn the board's decision. . . . In an appeal from the decision of a zoning board, we therefore review the record to determine whether there is a factual support for the board's decision, not for the contentions of the applicant.'"Francini v. Zoning Board of Appeals, 228 Conn. 785, 791,639 A.2d 519 (1994). "The trial court may not retry the case or substitute its judgment for that of the agency. . . ." (Internal quotation marks omitted.) Smith v. Zoning Board of Appeals, 227 Conn. 71, 80,629 A.2d 1089 (1993), cert denied, ___ U.S. ___, 114 S.Ct. 1190,127 L.Ed. 540 (1994). "The question is not whether the trial court would have reached the same conclusion but whether the record supports the decision reached." Burnham v. Planning ZoningCommission, 189 Conn. 261, 265, 455 A.2d 339 (1983).
"`Where a zoning agency has stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations. . . . Under this traditional and long-standing scope of review, the proper focus of a reviewing court is on the decision of the zoning agency and, with regard to its factual determinations, on the evidence before it that supports, rather than contradicts, its decision." (Citation CT Page 8495 omitted.) Caserta v. Zoning Board of Appeals, 226 Conn. 80, 86-87,626 A.2d 744 (1993). "An administrative appeal shall be confined to the record." (Internal quotation marks omitted.) Blaker v.Planning Zoning Commission, 219 Conn. 139, 146, 592 A.2d 155
(1991). Simply, the court must determine whether the conclusions reached by the agency are supported by the record. Primerica v.Planning Zoning Commission, 211 Conn. 85, 96, 558 A.2d 646
(1989).
"A variance is authority granted to the owner to use his property in a manner forbidden by the zoning regulations. . . ."Kaeser v. Zoning Board of Appeals, 218 Conn. 438, 445,589 A.2d 1229 (1991). A variance should be granted only where the applicant has fully complied with the specified requirements. Id. In order for a variance to be granted the applicant must show that the variance will not substantially affect the comprehensive zoning plan and that because of some peculiar characteristic of his property, the strict adherence to the zoning regulation will cause an unusual hardship which is unnecessary to the carrying out of the general purpose of the zoning plan. Adolphson v. Zoning Board ofAppeals, 205 Conn. 703, 709, 535 A.2d 799 (1988).
In its decision denying the plaintiffs' appeal, the Board determined that the variances granted to the plaintiffs after the 1964 variance were "merely extensions of the original 1964 Variance." (ROR, Item 33.) The decision by the Board indicates that it reached this conclusion based upon "[a] review of the MINUTES of those subsequent Variance applications [which] shows that the Board either directly referred back to the 1964 Variance, or recognized the existence of that Variance in its discussion of, and Action on, the subsequent applications." (ROR, Item 33.) Nevertheless, the minutes of the subsequent variance applications are not contained in the record. In fact, the record contains the only the notices of the variances granted in 1966, 1970, 1974, 1983 and 1985, and only the notices of the variance granted in 1974 actually refers to the 1964 variance. (ROR, Items 17, 18, 19, 20, and 21.)
Included in the record is a memorandum dated September 12, 1994, addressed to the Board from "Zoning Inspector" which states that "I have reviewed the MINUTES of the six Beck Applications for Variances subsequent to the original October 1964 Variance. I find that none of these applications were considered in a vacuum, the past history was reiterated to some degree in each instance. 09-20-65 Discussed 1964 Variance and denied application. 11-17-66 CT Page 8496 Incorporated 1964 condition in decision. 05-18-70 Discussed and expanded upon 1966 variance. 07-08-74 Discussed 1964 and 1970 variances. 04-04-83 Discussed prior variances and incorporated previous hardship into decision. 02-04-85 Referred to 1983 variance, incorporated previous hardship into decision." (ROR, Item 31.) However, this document does not constitute a review by the Board of the minutes, or place those minutes in the record.
Because the Board granted the variances to the plaintiffs in 1966, 1970, 1974, 1983 and 1985, it is presumed that the plaintiffs made the required showing of hardship in obtaining each variance, and that each variance is independent of any prior variance granted to the plaintiffs. See Burlington v. Jencik, 168 Conn. 506, 509,362 A.2d 1338 (1975); St. Patrick's Church Corp. v. Daniels,113 Conn. 132, 139, 154 A.2d 639 (1931). Furthermore, the decision by this court, Ryan, J., which held that the 1964 variance was invalid due to the condition of continued ownership of the property by Mr. Beck, did not address the validity of any variance granted to the plaintiffs other than the 1964 variance. Accordingly, in this instance the record does not support the Board's determination that the variances granted to the plaintiffs subsequent to the 1964 variance were "merely extensions of the original 1964 Variance and therefore disappeared with Judge Ryan's decision." See Francini v.Zoning Board of Appeals, supra, 228 Conn. 791.
Furthermore, the 1970 variance which permitted occupancy by an engineer and three employees has not lapsed by its own terms and otherwise remains valid. (ROR, Item 18.) Therefore, the Board acted arbitrarily in upholding the cease and desist order which requires the plaintiffs to "return [the plaintiffs' property] to its legal status as a two family house in accordance with the `B' Residence Zone Regulations" in that the order fails to allow the commercial uses permitted by the 1970 variance and § 60-4.1 of the New Canaan Zoning Regulations. (ROR, Items 1, 18 and 37.)
Accordingly, the plaintiffs' appeal is sustained.
KARAZIN, J.