[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, George Boisvert, the Zoning Enforcement Officer for the Town of Somers, Connecticut (Boisvert), appeals a decision of the defendant, Town of Somers Zoning Board of Appeals (ZBA), granting a variance to Maple Leaf Construction, Inc.[1]
(Maple Leaf) to allow a lot frontage of fifty feet which would have been the width of the proposed "Quail Run." The plaintiff appeals pursuant to General Statutes § 8-8.
PROCEDURAL HISTORY/FACTS
CT Page 4082-FF
On September 22, 1994, Maple Leaf applied for a variance of Section 4.05 of the Somers Zoning Regulations to obtain a lot frontage of 50 feet for property entitled Lot 44 located on Pond Circle within the boundaries of a partially completed subdivision known as Heron Pond in Somers, Connecticut.[2] [Return of Record (ROR), Item 2). Lot 44 had access and frontage along a cul-de-sac known as Quail Run. (ROR, Item 7b). The Somers Planning and Zoning Commission (Commission) had approved the Heron Pond Subdivision on July 23, 1987, with the understanding that Quail Run would provide the sole access for Lot 44. (ROR, Item 7C). In 1990, the Town of Somers amended its subdivision and zoning regulations. The amended regulations provided that cul-de-sacs shall serve no fewer than three interior lots. (ROR, Item 1, section 6.02.02). Consequently, Quail Run could not be approved to provide access to Lot 44 pursuant to the new regulations.
Maple Leaf requested the variance because "[t]he lot was rendered non-conforming by a change in the regulations since the subdivision where it is located was approved. A request for an extension of time in which to complete the approved subdivision was denied by the Commission on June 30, 1994."[3] (ROR, Item 2).
On October 13, 1994, following a public hearing, the ZBA granted Maple Leaf the variance because "[t]he recognized hardship was the non-conforming rendering of this lot #44 by an amendment to the Somers Zoning Subdivision Regulations on December 20, 1990." (ROR, Item 3b).
The ZBA published notice of its decision to grant the variance on October 21, 1994. (ROR, Item 3b). On November 15, 1994, the plaintiff filed an appeal with the clerk of the superior court, judicial district of Tolland at Rockville. The plaintiff asserts that the ZBA's decision to grant Maple Leaf a variance was arbitrary, illegal and in abuse of its discretion because (1) there was no evidence before the ZBA to allow it reasonably to conclude that a literal enforcement of the zoning regulations would result in exceptional difficulty or unusual hardship to Maple Leaf; and (2) the reasons given for approval were not supported by the record, were factually incorrect, were based on incorrect information and were insufficient as a matter of law. (See plaintiff's Amended Complaint, January 12, 1995, p. 3).[4] The defendant, ZBA, filed an answer on April 26, 1995 and a return of record on March 6, 1995. On January 10, 1996 and January 31, 1996, the parties appeared before the court and argued the merits of the appeal. CT Page 4082-GG
JURISDICTION
In order to take advantage of a statutory right of appeal from a decision of an administrative agency, there must be strict compliance with the statutory provisions which create that right.Simko v. Board of Appeals, 206 Conn. 374, 377, 538 A.2d 202 (1988). These provisions are mandatory and jurisdictional; failure to comply may subject the appeal to dismissal. Id.; Capalbo v.Planning Zoning Board of Appeals, 208 Conn. 480, 485,547 A.2d 528 (1988).
A. Aggrievement
Aggrievement is a jurisdictional matter and a prerequisite for maintaining an appeal. Winchester Woods Associates v.Planning Zoning Commission, 219 Conn. 303, 307, 592 A.2d 953
(1991). The question of aggrievement is essentially one of standing. DiBonaventura v. Zoning Board of Appeals, 24 Conn. App. 369,373, 573 A.2d 1222 (1991). Unless the plaintiff alleges and proves aggrievement, the court must dismiss the appeal. Id.
Pursuant to General Statutes § 8-8 (a)(1), an "aggrieved person" includes "any officer. . . charged with the enforcement of any order, requirement or decision of the board." General Statutes § 8-8 (a)(1). See Dupuis v. Building Inspector ofTown of Groton, 152 Conn. 308, 310, 206 A.2d 422 (1965) (holding that the officer charged with enforcing decision of Zoning Board of Appeals is authorized to appeal pursuant to General Statutes § 8-8). The parties have stipulated, and the court so finds, that the plaintiff, Boisvert, is, and at all relevant times has been, the duly appointed Zoning Enforcement Officer for the Town of Somers. As such, he issues zoning permits for uses consistent with the Somers Zoning Regulations. Furthermore, the ZBA's decision to grant a variance compels the plaintiff to issue permits for use that does not ordinarily comply with the Somers Zoning Regulations. The plaintiff, therefore, "is charged with the enforcement of the decision of the board." Accordingly, the court finds that the plaintiff is aggrieved and has standing to bring this appeal.
B. Timeliness
General Statutes § 8-8(b) provides that "any person aggrieved by any decision of a board may take an appeal. . . CT Page 4082-HH within fifteen days from the date that notice of the decision was published. . ." Such appeal "shall be commenced by service of process in accordance with [section 8-8]." General Statutes §8-8(b). The ZBA published notice of its decision to grant the variance on October 21, 1994. (ROR, Item 3b). The plaintiff served the Town of Somers in accordance with General Statutes § 8-8 on November 3, 1994. This appeal, therefore, is timely.
STANDARD OF REVIEW
A trial court may grant relief in an appeal from a decision of an administrative authority only where the authority has acted unreasonably, illegally, arbitrarily or has abused its discretion. Smith v. Zoning Board of Appeals, 227 Conn. 71, 80,629 A.2d 1089 (1993). The court, however, "may not substitute its judgment for the wide and liberal discretion vested in the local authority when acting within its prescribed legislative powers." (Internal quotation marks omitted.) Frito-Lay, Inc. v. Planning Zoning Commission, 206 Conn. 554, 572-73, 538 A.2d 1039 (1988). The court simply determines whether the record reasonably supports the conclusions reached by the agency. DeBeradinis v.Zoning Commission, 228 Conn. 187, 198, 635 A.2d 1220 (1994). Where the ZBA has stated the reasons for its decision, the court is not at liberty to probe beyond them. DeMaria v. Planning Zoning Commission, 159 Conn. 534, 541, 271 A.2d 105 (1970). If the record supports any of the reasons stated by the ZBA [to grant the variance to Maple Leaf] then the court must uphold the ZBA's decision. DeBeradinins v. Zoning Commission, supra,228 Conn. 187.
"The burden of proof is on the plaintiff to demonstrate that the board acted improperly." Spero v. Zoning Board of Appeals,217 Conn. 435, 440, 586 A.2d 590 (1991).
DECISION
The ZBA has the power to grant a variance pursuant to General Statutes § 8-6 (3). "A variance is authority granted to the owner to use his property in a manner forbidden by the zoning regulations. . . ." (Citation omitted; internal quotation marks omitted.) Kaeser v. Zoning Board of Appeals, 218 Conn. 438, 445,589 A.2d 1229 (1991). The ZBA should grant variances sparingly and only in circumstances where the specified requirements are fully complied with. Id.; Pleasant View Farms Development, Inc.v. Zoning Board of Appeals, 218 Conn. 265, 270-71, 588 A.2d 1372
CT Page 4082-II (1991). A variance will be granted when: (1) the variance is shown not to substantially affect the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning regulations is shown to cause unusual hardship which is unnecessary to the carrying out of the general purpose of the zoning plan. Franciniv. Zoning Board of Appeals, 228 Conn. 785, 790, 639 A.2d 519
(1994); Adolphson v. Zoning Board of Appeals, 205 Conn. 703, 709,535 A.2d 799 (1988).
Although the court is aware that the ZEO has taken this appeal and not Maple Leaf, the court has difficulty in finding that Maple Leaf, the applicant for the variance, legally could have applied for the variance.
At the time of its application, Maple Leaf claimed that Lot 44 was a non conforming lot which required a variance from the 175 feet of frontage required on Pond Circle because Quail Run could not be approved under the current regulations as amended in 1990. Maple Leaf claimed that Lot 44 had no other access other than Quail Run and, in essence, was a "trapped piece back there." (ROR, Item 6, p. 6).
The ZEO argues, and the court so finds, that because the original 1987 approval for Phase III of the Heron Pond Subdivision had expired on July 23, 1994 and the Commission had denied Maple Leaf an extension of the original approval, Lot 44 joined adjacent property to form one large conforming parcel of land. Therefore, Maple Leaf no longer owned a lot entitled "Lot 44" or land entitled "Quail Run," but instead owned a 26 acre tract of land with over 300 feet of frontage on Florida Road and Pond Circle.[5]
The record further reflects that at the time Maple Leaf applied for the variance, it was not even the record owner of the land formerly known as Quail Run.
The court finds, therefore, that Maple Leaf did not have standing to request the subject variance or to bring an appeal. "When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue and not whether the controversy is otherwise justiciable, or whether, on the merits, the plaintiff has a legally protected interest that the defendant's action has invaded." Mystic Marinelife Aquarium, Inc. v. Gill, 175 Conn. 483,492, 400 A.2d 726 (1978). CT Page 4082-JJ
The ZEO claims that because Maple Leaf did not own the land formerly known as Quail Run, its request for a variance on Quail Run in order to build on the lot formerly known as Lot 44 is invalid. Accordingly, the ZEO contends that Maple Leaf has no legal or personal interest in the outcome of the proceeding.
The record clearly reflects that Maple Leaf did not have title to the land formerly known as Quail Run at the time of the ZBA's decision or when Maple Leaf applied for the variance, but rather, had an easement to use the land.
The court concludes, therefore, that Maple Leaf did not own the land formerly known as Quail Run at the time of the application for the variance, or at the time the ZEO filed this appeal.[6]
Nevertheless, Maple Leaf claims that it has standing because the easement to use Quail Run, which it retained, provided it with a sufficient legal interest to maintain an appeal.
The court has found no appellate court decisions addressing the issue of whether an easement constitutes a sufficient legal interest to maintain an appeal. The court has found, however, two superior court decisions on this issue. In both cases, the court held that pursuant to General Statutes § 8-8, which the court found to be clear, there was no standing to appeal by the holder of either an exclusive or nonexclusive easement. Shelton Squarev. Shelton Planning Zoning Commission, Superior Court, judicial district of Ansonia/Milford at Milford. Docket No. CV90033652S (April 24, 1991, Fuller, J.); Shelton Square v. Shelton Planning Zoning Commission, Superior Court, judicial district of Ansonia/Milford at Milford. Docket No. CV91034386S (April 23, 1991, Fuller, J.).[7]
Maple Leaf has failed to provide the court with any case law supporting the proposition that an easement is a sufficient legal interest to convey standing to the owner of the easement, despite the fact that at the last court hearing on the matter the court invited the parties to submit briefs on this issue, and, in particular told Maple Leaf's attorney that it wanted something on this issue to support Maple Leaf's aforementioned claim. None of he parties filed briefs.
Accordingly, the court finds that Maple Leaf lacked standing to apply for the variance or take an appeal from a decision of the ZBA involving the land formerly known as Quail Run. CT Page 4082-KK
Of course, in the present case, the court is aware that it was the ZEO, and not Maple Leaf who took the appeal. Nevertheless, the court finds that because Maple Leaf lacked ownership of the fee in the land formerly known as Quail Run, it did not have standing even to apply for a variance to the ZBA. It is logical that there should be a right of appeal to an applicant turned down by the ZBA for a variance and because there is clearly a lack of standing to appeal, the same rule would apply to the filing of the application to the ZBA. Accordingly, the ZBA's decision to grant Maple Leaf a variance should be reversed on the ground that Maple Leaf did not have standing to file a variance application with the ZBA, and, therefore, the ZBA's approval was illegal.
Furthermore, Maple Leaf must prove exceptional difficulty or unusual hardship before the ZBA can issue a variance. Francini v.Zoning Board of Appeals, supra, 228 Conn. 790.
In the present action, the court finds it difficult to find hardship for the reasons as set forth below.
First, when the Commission denied Maple Leaf's extension, Lot 44 became non existent as a "lot," and became part of land which encompassed other lots in Phase III which also ceased to exist as named "lots". By making the Phase III lots into one parcel, the lot formerly known as Lot 44 became conforming because there was adequate frontage on other town roads to satisfy the zoning regulations. If Maple Leaf was to reapply for a subdivision, it might have to reconfigure the lots in Phase III to obtain enough frontage from adjoining lots so as to meet the 175 foot frontage requirement. Although this might reduce the number of lots, any variance requested under this circumstance would be due to a financial hardship (i.e. reducing the number of buildable lots and expanding existing roadways), which is not a sufficient reason for the ZBA to grant a variance. Hyatt v. Zoning Board of Appeals,163 Conn. 379, 383, 311 A.2d 77 (1972).[8]
Furthermore, in its variance application, Maple Leaf stated that the Commission's denial of its extension created the necessity for a variance. It was, however, Maple Leaf's failure to act promptly in completing the site improvements for Phase III, failure to timely request the extension, failure to file the necessary bond and failure to go to the Inland Wetlands Commission early enough to get its approval at the time of the May 16, 1994 request for an extension or at the subsequent hearing that caused the Commission to deny the extension, rather than any act of the Commission. The CT Page 4082-LL hardship, therefore, was self created. The ZBA does not have the authority to grant a variance when the applicant creates the hardship. Adolphson v. Zoning Board of Appeals, supra, 205 Conn. 712.
Lastly, "[i]t is well settled that the hardship must be different in kind from that generally affecting properties in the same zoning district, and must arise from circumstances or conditions beyond the control of the property owner. Citation omitted; internal quotation marks omitted.) Pollard v.Zoning Board of Appeals, 186 Conn. 32, 39, 438 A.2d 1186 (1982).
In the present action, Maple Leaf has failed to prove that the Somers Zoning Regulations, specifically section 4.05, affected its property differently than it would affect any other property in the same zoning district.
Accordingly, the court finds that the ZBA acted illegally, unreasonably and in abuse of its discretion by issuing the variance.
For all of the above reasons, the appeal is sustained.