[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, James and Doris Linville, appeal the decision of the defendant, Norwalk Zoning Board of Appeals, granting seven variances to the codefendant, Robert H. Bayne, III, to allow him to reconstruct and modify his legally noncomforming home.
In August, 1998, the codefendant, Robert H. Bayne, III, applied to the CT Page 9434 Norwalk Zoning Board of Appeals (ZBA) seeking to remove, reconstruct and modify his existing single-family home located at 14 Rocky Point Road in the city of Norwalk. (Return of Record [ROR], Item 1.) The application sought the variance of six zoning regulations. (ROR, Item 1.) On October 1, 1998, the ZBA held a public hearing on Bayne's application. (ROR, Items 2, 3.) After the close of the public hearing, the ZBA voted unammously to approve Bayne's application as modified by the city's zoning inspector. (ROR, Items 1-3.) On October 8, 1998, notice of the ZBA's decision was published in the Hour newspaper. (ROR, Item 4.)
The Linvilles commenced this appeal by service of process on October 20, 1998, pursuant to General Statutes § 8-8.
Bayne owns a one and one-half story single-family residence located in the B residence zone of the city of Norwalk, which he purchased in 1997. (ROR, Item 1.) The B residence zone permits single-family residences, up to two and one-half stories, on property having a minimum of 6,250 square feet. (Norwalk Building Zone Regs., § 118-340.) Bayne's home is legally nonconforming because it predated the B residence zone and is located on an undersized lot with less than the minimum setbacks for that zone.[1] (ROR, Item 1; Stipulation.) The home also exceeds the maximum lot coverage and is located in a flood zone.[2] (ROR, Item 1.)
In August, 1998, Bayne applied to the Norwalk zoning board of appeals for several variances that would enable him "to remove the existing residence and to construct a new residence in its stead."[3] (ROR, Item 1, p. 3.[4]) Upon review of the application, the city's zoning inspector submitted his report to the ZBA after determining that an additional height variance was required and recalculating some of the other variance requests.[5] (ROR, Item 1, p. 7.) After a properly noticed public hearing; (ROR, Items 3, 4); the ZBA voted unammously to approve the variances with the amendments and recalculations of the zoning inspector.[6] (ROR, Item 3, pp. 10-11.) Notice of the ZBA's decision was published in the Hour newspaper on October 8, 1998. (ROR, Item 4.)
The plaintiffs filed this appeal on October 20, 1998, challenging the decision of the ZBA on the ground that it acted illegally, arbitrarily and in abuse of its discretion.
Appeals from administrative agencies exist only under statutory authority. See Charles Holdings, Ltd. v. Planning Zoning Board ofAppeals, 208 Conn. 476, 479, 544 A.2d 633 (1988); Simko v. Zoning Board ofAppeals, 206 Conn. 374, 377, 538 A.2d 202 (1988). "A statutory right of appeal from a decision of an administrative agency may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.) Simko v. Zoning Board ofCT Page 9435Appeals, supra, 206 Conn. 377. Such provisions "are mandatory and jurisdictional in nature, and, if not complied with, the appeal is subject to dismissal." (Internal quotation marks omitted.) Id.; see alsoCharles Holdings. Ltd. v. Planning Zoning Board of Appeals, supra,208 Conn. 478-79.
The question of aggrievement is essentially one of standing. McNallyv. Zoning Commission, 225 Conn. 1, 5, 621 A.2d 279 (1993). "Aggrievement is established if there is a possibility . . . that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) Connecticut Resources Recovery Authority v. Planning Zoning Commission, 225 Conn. 731, 739 n. 12, 626 A.2d 705 (1993). Mere generalizations and fears, however, do not establish aggrievement.Caltabiano v. Planning Zoning Commission, 211 Conn. 662, 668,560 A.2d 975 (1989).
Those who own land that abuts or is within a radius of one hundred feet of the land involved in any decision of a planning or zoning board are statutorily aggrieved. See General Statutes § 8-8 (a). The plaintiffs have pleaded aggrievement as they allege that they are adjoining property owners; see complaint, ¶¶ 11-12; and they have proven aggrievement by the presentation of their warranty deed at the hearing. See Plaintiffs' Exhibit 1. The court finds that the plaintiffs are aggrieved.
An appeal from a decision of a zoning board "shall be commenced by service of process . . . within fifteen days from the date the notice of the decision was published. . . . "General Statutes § 8-8 (b). The chairperson of the board and the clerk of the municipality shall be included in such service. See General Statutes § 8-8 (e).
On October 1, 1998, the ZBA voted to grant Bayne's variance application. (ROR, Item 3.) Notice of the ZBA's decision was published on October 8, 1998, in the Hour. (ROR, Item 4.) On October 20, 1998, the writ, summons and citation for this appeal were served in the hands of Mary O. Keegan, town clerk of Norwalk, and K.C. Senie, city clerk for Norwalk. (Sheriff's Return.) The writ, summons and citation were also served upon Friedrich Wilms, chairman of the ZBA, and Robert H. Bayne, III, the successful applicant, by leaving a true and attested copy at their usual places of abode. (Sheriff's Return.) The appeal was timely filed and served upon the appropriate parties.
"The standard of review on appeal from a zoning board's decision to grant or deny a variance is well established." Bloom v. Zoning Board ofAppeals, 233 Conn. 198, 205, 658 A.2d 559 (1995). "[T]he trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons." Spero v. ZoningCT Page 9436Board of Appeals, 217 Conn. 435, 441, 586 A.2d 590 (1991). "In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its decision will not be disturbed unless it is found to be unreasonable, arbitrary or illegal." Id. "Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing." (Internal quotation marks omitted.) Bloom v. Zoning Board of Appeals, supra,233 Conn. 206. "The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision."Francini v. Zoning Board of Appeals, 228 Conn. 785, 791, 639 A.2d 519
(1994).
Upon a motion by chairperson Wilms, the ZBA voted unammously to approve all of the variances requested by Bayne as amended by the zoning inspector. The stated reasons for the approval were: "I make a motion to grant a variance . . . for proposed replacement of a single family dwelling in B residence zone. . . . The height [variance] stems from the flood elevation requirement. We do note that also the first floor will provide parking, which is a significant safety issue in this neighborhood, and with regards to the setbacks that the strict interpretation of the setback requirements would render much of the property unusable and that is due to the lot's undersized nature and also the unusual shape of the lot." (ROR, Item 3, pp. 10-11.)
The Linvilles appeal this decision of the ZBA on the ground that the ZBA acted illegally, arbitrarily and in abuse of its discretion by granting the requested variances in that: (a) Bayne did not prove the hardship necessary to obtain the variances; (b) the ZBA allowed an increase in several preexisting nonconformities on the property; (c) the ZBA illegally granted two height variances and did not accurately consider that the belvedere sitting atop the roof adds a fifth story to the home; (d) there was improper notice because the ZBA approved a front setback of zero feet although Bayne only requested two and one-half feet and the notice only advertised a variance of two and one-half feet; (e) the ZBA exceeded its authority by acting legislatively and changing the zoning regulations.
The Linvilles argue that Bayne already lives in a house on the subject property and his desire to tear down that home in order to construct a larger one is not a legally cognizable hardship. Rather, they argue, the hardship is self-created because it arises from the application of the zoning regulations to the particular preferences of the architectural design chosen by Bayne. The Linvilles further argue that there is no reason that Bayne could not reconstruct his house within the limits of the regulations. CT Page 9437
Bayne argues that the required setbacks of the B zone, as applied to his small irregularly shaped lot, create a hardship that does not generally affect other properties within the same zone. He argues that under the regulations he can perform only routine maintenance and repairs and any substantial improvements to the property would have to be done in compliance with the regulations. This, he argues, is impossible; because of the shape and size of his lot, he cannot comply with the regulations and, therefore, a variance is needed.
"A variance is authority granted to the owner to use his property in a manner forbidden by the zoning regulations. . . . The power of the board to grant a variance should be used only where a situation falls fully within the specified requirements. . . . Thus, the power to grant a variance should be sparingly exercised. . . . An applicant for a variance must show that, because of some peculiar characteristic of his property, the strict application of the zoning regulation produces an unusual hardship, as opposed to the general impact which the regulation has on other properties in the zone. . . . Variances cannot be personal in nature, and may be based only upon property conditions. . . . Thus, the identity of a particular user of the land is irrelevant to zoning. . . . In fact, [the Supreme Court has] stated that [p]ersonal hardships, regardless of how compelling or how far beyond the control of the individual applicant, do not provide sufficient grounds for the granting of a variance." (Citations omitted; internal quotation marks omitted.)Reid v. Zoning Board of Appeals, 235 Conn. 850, 857, 670 A.2d 1271
(1996).
"For a variance to be granted under General Statutes [§ 8-6 (a) (3)], two conditions must be fulfilled: (1) the variance must be shown not to affect substantially the comprehensive zoning plan; and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan. . . . Proof of hardship is, therefore, a condition precedent to the granting of a variance, and such hardship must arise from the circumstances or conditions beyond the applicant's control." (Citations omitted; internal quotation marks omitted.)Mandanici v. Zoning Board of Appeals, 50 Conn. App. 308, 311, 717 A.2d 287, cert. denied, 247 Conn. 935, 719 A.2d 1174 (1998); see also CumberlandFarms, Inc. v. Town of Groton, 247 Conn. 196, 215, 719 A.2d 465 (1998).
Although the Linvilles argue that "Mr. Bayne could have contented himself with reconstructing his house within the limits of the zoning regulations"; (Linvilles' Brief, p. 15); the record contained sufficient evidence that the size and shape of Bayne's legally nonconforming lot prohibits this. CT Page 9438
The Linvilles argue that this case is analogous to several other variance cases in which the court found insufficient proof of hardship to justify the granting of a variance. The Linvilles rely on the case ofJaser v. Zoning Board of Appeals, 43 Conn. App. 545, 684 A.2d 735
(1996), in which the Appellate Court held that the trial court impermissibly substituted its judgment for that of the ZBA's when the trial court found sufficient hardship to justify the granting of a setback variance to enable the unsuccessful applicant to build a single-family home. Jaser is readily distinguishable from the present case, however. In Jaser v. Zoning Board of Appeals, supra, the Appellate Court held that the record before the ZBA supported the ZBA's decision that no hardship existed because the applicant admitted that it was possible for the house to be built in conformance with the zoning regulations, but the owner chose, instead, to seek a variance. In the present case, the record reflects no evidence that this home could be reconstructed in conformance with the regulations. As a matter of fact, all of the evidence points otherwise.
The Linvilles also argue that the present case is analogous toArmstrong v. Zoning Board of Appeals, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 162630 (November 27, 1998,Lewis, J.), where the applicant sought a variance to construct a new/additional detached garage to gain more storage space because his current garage was subject to flooding and also sought additional variances to enlarge the size of his home. The plaintiffs only appealed the variances as they related to the garage. See id. The court held that the record contained no evidence of hardship with which to justify the variance to construct the garage as the applicant already had a garage that he used for storage space, and he had full use of his property as a residence. See id. In the present case, the record demonstrates that Bayne does have a hardship such that he cannot make any substantial improvements to his existing dwelling without obtaining variance approval.
Finally, the Linvilles argue that the present case is also analogous toDillaway v. Zoning Board of Appeals, Superior Court, judicial district of New Haven at New Haven, Docket No. 365800 (June 19, 1995, Booth J.), where the applicant requested a variance to move, enlarge and reconstruct her home. Dillaway v. Zoning Board of Appeals, supra, is distinguishable from the present case, however, because the court found, pursuant to the town's zoning regulations, that the applicant did not need a variance to rehabilitate and reconstruct her home if it remained at its present location upon the property. See id. Such is not the situation here, however, because, pursuant to the Norwalk zoning regulations, Bayne does need a variance to substantially rehabilitate or reconstruct his home CT Page 9439 upon this lot.[7]
The present case is actually analogous to O'Neill v. Zoning Board ofAppeals, Superior Court, judicial district of New Haven at New Haven, Docket No. 417142 (March 11, 1999, Blue, J.). In O'Neill v. Zoning Boardof Appeals, supra, the applicants owned a small, irregularly shaped, nonconforming lot, upon which a small nonconforming garage with a summer unit apartment stood. See id. The applicants, without realizing that they needed a variance to rebuild, demolished the structure; once they were informed of the necessity of a variance, they submitted their application, which was approved. See id. On appeal, the plaintiff, an abutting landowner, claimed that any hardship of the applicants was self-created by the applicants' demolition of their previously existing structure. See id. The court stated: "It is true that by demolishing the old structure the Crofts have injured themselves to some degree. When the old structure was in place, the subject property had some useful function with the old structure demolished and no new structure built, the property, for all practical purposes, has none. The Crofts have indeed injured themselves to this extent. This fact, however, is irrelevant to the claimed hardship. The problem is that, given the irregular shape of the property, the property could not be put to any conforming use absent a variance, with or without the former structure in place. This is a critical distinction under our law." (Emphasis in original.) Id. The court went on to hold that "[t]he true hardship here is the irregular shape of the lot. This is a hardship that the [applicants] have not created." Id.; see also Vandenbroeck v. Redding Zoning Board of Appeals, Superior Court, judicial district of Danbury at Danbury, Docket No. 313698 (January 17, 1996, Ottaviano. S.T.R.) (ZBA acted within its authority in granting three variances to applicant who destroyed legally nonconforming structure and built new larger nonconforming structure because a conforming structure could not be built due to the topography of the lot.).
The present case is also analogous to Stillman v. Zoning Board ofAppeals, 25 Conn. App. 631, 596 A.2d 1, cert denied, 220 Conn. 923,598 A.2d 365 (1991), where the applicant sought a variance to construct an addition to her home on her legally nonconforming lot. The court found that the size of the lot, in combination with the location of the well and the septic system, made it impossible for the applicant to build an addition anywhere on the lot except where she was in violation of the setback requirements. See id., 636: As such, the court held that "[t]hese unique conditions make the setback regulation exceptionally burdensome and support the board's granting of the variance." Id., 636-67. InStillman the trial court had held that any hardship experienced by the applicant was self-created; the appellate court, however, in reversing the trial court, held that the hardship arose from the configuration of the CT Page 9440 lot and the location of the well and septic and that these conditions were not personal but would exist regardless of who owned the lot. See id., 637.
In the present case, Bayne owns a lot that is 2,081 square feet, one third of the required 6,250 square feet in a B residence zone. The lot is not only significantly undersized but is unusually shaped; it is less than fifty feet across at the front (easterly side) and, after going almost straight back for less than nine feet, the southerly side begins to make a slight angle inward for some twenty-eight feet and then proceeds to cut sharply to the north for less then fifty feet ending with the back part of the lot less than six feet across. See ROR, Item 1, p. 9 (Map No. 627, Norwalk Land Records).
It is an important principle that the right to a variance runs with the land. "The necessity for a variance is created by the application of zoning regulations to the land, and the necessity stays with the land until the regulations are changed." T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) § 3.D.2, p. 139, citing Kulak v. ZoningBoard of Appeals, 184 Conn. 479, 440 A.2d 183 (1981); Johnny Cake Inc.v. Zoning Board of Appeals, 180 Conn. 296, 429 A.2d 883 (1980);Stankiewicz v. Zoning Board of Appeals, 15 Conn. App. 729, 546 A.2d 919
(1988), aff'd, 211 Conn. 76, 556 A.2d 1024 (1989); Landino v. ZoningBoard of Appeals, Superior court, judicial district of New Haven at New Haven, Docket No. 241982 (April 14, 1986, Foti, J.) (1 C.S.C.R. 251). In the present case, the hardship arises from the size and configuration of the lot and is not personal in nature. No one would be able to build, reconstruct or substantially renovate this property without obtaining a variance. Accordingly, there exists sufficient evidence in the record to support the ZBA's finding of hardship.
The Linvilles next argue that the ZBA erred in granting each of the setback variances to Bayne. They argue that "Norwalk legislation (Section 118-1400) makes clear that variances are not and can not be granted to expand existing non-conformities unless Mr. Bayne proves the most unique and exceptional difficulties in applying the B residence zone regulations to his property." (Linvilles' Brief, p. 22.) Specifically, the Linvilles argue that the zero front setback "is absolutely indefensible except to admit it was an error since the applicant did not seek it and the Board did not advertise it in its notice (thus violating the due process notice requirements. . . .)"; (Linvilles' Brief, p. 20); the rear setback should not have been granted because Bayne's current residence conforms to the rear setback[8]; and, the ZBA erred in lessening the sideyard and aggregate sideyard setbacks.
As to the propriety of the front setback, Bayne argues that the CT Page 9441 additional setback variance was required because of the cantilevered second floor, which normally would be permitted as of right. He also argues that the publication properly noticed the zero front setback. As to the remaining setbacks, Bayne argues that, with the exception of the second floor deck, "the proposed structure is actually smaller than the existing structure and has greater conformity to the required regulations." (Emphasis in original.) (Bayne's Brief, p. 7.)
The legal notice notifying the public of the upcoming hearing stated, inter alia, "Variance to reduce front setback from 30 (1.2 existing) to zero ft. . . ." (ROR, Item 4, Publisher's Affidavit.) Accordingly, there is no merit to the Linvilles' claim that the front setback was not properly noticed.
"Whether a variance can be granted depends upon the provisions of the zoning regulations on nonconforming uses and the customary requirements for a variance." R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (1999) § 52.3, p. 559. An overview of the pertinent provisions of the Norwalk building zone regulations reveals that "[a] nonconforming structure shall not be enlarged or altered if the result would be an increase in the extent to which the structure does not conform to these regulations. A nonconforming structure may be enlarged or altered, provided that the enlargement or alteration conforms to these regulations." Norwalk Building Zone Regs. § 118-800(D)(1). "The presence of a nonconformity shall not, in itself, be considered grounds for the issuance of a variance for any other property." Norwalk Building Zone Regs. § 118-800(B)(3). "A nonconforming structure . . . which is destroyed by any means to the extent of more than fifty percent (50%) of its market value at the time of its destruction shall not thereafter be reconstructed except in conformance with these regulations." Norwalk Building Zone Regs. § 118-800(B)(6).
The regulations also outline the authority of the ZBA. The ZBA may, inter alia, "[v]ary any requirement of these regulations in harmony with their general purpose and intent, so that substantial justice may be done. This authority shall be exercised in a manner to secure the public health, safety and welfare solely in instances where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of these regulations." (Emphasis added.) Norwalk Building Zone Regs. § 118-1410(3).
In part VI (A), this court determined that the record before the ZBA supported its finding of a hardship because of the size and configuration of Bayne's lot. The question before this court is whether the ZBA had the authority to allow increases in the already-existing nonconformities and to allow the rear setback to become nonconforming. CT Page 9442
The ZBA's variance power "exists to allow what is dissallowed by the regulations." T. Tondro, supra, § 3.E.3, p. 163. Accordingly, "there seems to be nothing more wrong with granting a variance to permit the extension of an existing nonconforming use, than there is in granting a variance to allow the commencement of a use. In fact, since the nonconformity already exists, there seems to be less harm in allowing its extension, than there is in allowing a new unpermitted use to get started through the use of the variance power." (Emphasis in original.) Id., 163-64. "Moreover, the zoning board of appeals is statutorily authorized to vary the terms of any zoning regulation as long as the board acts consistently with variance-granting principles. . . . This appears to allow the board of appeals to authorize, through the granting of a variance, an owner to ignore a regulation prohibiting extension of a nonconforming use.". (Emphasis in original.) Id., 164.
In the present case, the Linvilles argue that "Norwalk legislation . . . makes clear that variances are not and can not be granted to expand existing non-conformities unless Mr. Bayne proves the most unique and exceptional difficulties in applying the B residence zone regulations to his property." (Emphasis added.) (Linvilles' Brief, p. 22.) Here, Bayne is seeking to reconstruct his nonconforming structure and variances are required to accomplish this (which Bayne would need regardless of the size of the structure because the lot is so small and irregularly shaped). As discussed supra, there was sufficient evidence in the record to support the ZBA's finding of hardship. As such, the ZBA did determine, as the Linvilles argue is necessary, that there was sufficient evidence of the "most unique and exceptional difficulties in applying the B residence zone regulations to his property." (Linvilles' Brief, p. 22.) Accordingly, the plaintiffs have not met their burden of proof that the ZBA acted illegally, arbitrarily and in abuse of its discretion by approving the setback and coverage variances.
The Linvilles further argue that the ZBA acted illegally in granting a variance to enlarge Bayne's home from one and one-half stories to four stories with a height of 38.7 feet, rather than the allowed two and one-half stories, thirty-five feet maximum. They also argue that the cupola or belvedere adds a fifth story to the home in clear violation of the zoning regulations.[9]
Bayne argues that the regulations contemplate a "typical" residence, with living space on the first floor and up to one and one-half stories of additional living space above that. He argues further that the § 118-1100 of the Norwalk building zone regulations, which incorporates the federal flood elevations, will not allow him to use the ground floor as living space because it is located in the flood zone. Thus, he contends, CT Page 9443 the ZBA recognized "that it is an unusual and unnecessary hardship under the circumstances to count the ground floor as a story but then to prohibit its use." Even with the addition of an additional floor, he argues, a height variance of only 3.7 feet was needed.
The record reveals that the ZBA voted to grant the height variances because of the flood elevation requirements. The ZBA also noted that the ground floor will provide much needed parking, which they characterized as a "significant safety issue in this neighborhood." (ROR, Item 3, p. 11.).
Norwalk building zone regulations § 118-1100(C)(5)(a) provides that, in Flood Zones A1-30, "[a]ll new construction and substantial improvements of residential structures shall have the lowest floor (including basement) elevated to or above the base flood level." The record reveals that Bayne's property is approximately five feet below the required flood elevation. (ROR, Item 1.) As such, the ground floor of any "substantially improved" home could not be used for living space. Further, Norwalk building zone regulations § 118-1220(C)(1) provides that single-family residence shall have, at a minimum, two off-street motor vehicle parking spaces. Bayne currently has no offstreet parking.
In complying with the flood regulations, Bayne cannot use the first floor of his proposed "substantially improved" residence as living space. By allowing him to use it as garage space, the ZBA followed the flood regulations (rather than granting another variance) and brought the property into further compliance by removing another nonconformity with the addition of the required offstreet parking.
The regulations provide, however, that "[e]xcept for buildings within a development park, at no point, regardless of topography, shall the number of stories exceed by more than one (1), the maximum number of stories as otherwise would be permitted." Norwalk Building Zone Regs. § 118-100(B). The Schedule Limiting Height and Bulk of Buildings appended to the Norwalk building zone regulations provides that the maximum height of a dwelling in a B residence zone shall be two and one-half stories and thirty-five feet. This section, together with § 118-100(B), would allow the ZBA to grant a variance for one additional story with a height variance sufficient to accommodate that additional story.
Furthermore, the ZBA, having determined that the size and configuration of Bayne's lot, in combination with the flood regulations, caused an extreme hardship justifying the granting of the variances, exceeded its authority by allowing Bayne one and one-half additional stories rather than the maximum one that is allowed by virtue of the regulations. Also, the court is unable to find sufficient evidence in the record to justify CT Page 9444 the extra one-half story.
Bayne's current home is only one and one-half stories. In reconstructing his home, in order to comply with the flood and parking regulations, the first floor will become a garage area rather than living space. The regulations, in certain cases, would allow two and one-half additional stories above the garage. The record reveals no evidence to justify the granting of an additional one-half story. David Water, Bayne' s attorney, reported at the ZBA hearing that this "very same house could be built with a peaked roof from here and this would actually comply as a half-story." (ROR, Item 3, p. 3.) Bayne also argues that it is only the pitch of the roof that turns the top floor into a full story as opposed to a half story. Although, as Bayne argues, adding the pitched roof would add more height to the building, the regulations define the difference between a full and half story, and the lack of a pitched roof is what makes the top floor of this structure a full story. As such, the four-story structure fails to comply with the regulations, with no clear evidence to support the extent of this particular variance. Although the record reveals that a hardship exists which would justify the additional story and the additional height necessary to complete that story, the record does not contain sufficient evidence of a hardship to justify the granting of an additional one and one-half stories. Accordingly, the ZBA acted beyond its authority in granting the variance that allowed four stories.
As discussed supra, the notice of the public hearings provided that Bayne was seeking a variance, inter alia, to reduce the front setback from thirty feet (1.2 feet existing) to zero feet. (See ROR, Item 4, Publisher's Affidavit.) Accordingly, this claim has no merit.
The Linvilles argue that the ZBA "unlawfully intruded upon the legislative authority of the Norwalk Planning and Zoning Commission's legislative authority to establish local zoning regulations when it granted seven variances to [the applicant] . . . ." Bayne argues that "[b]y definition, a zoning board of appeals acts to contravene prescribed zoning regulations [and] . . . the Legislature has required that each municipality with a zoning commission provide a zoning board of appeals to perform this function and provide such relief."
This claim is also without merit. A zoning board of appeals has the express power to grant variances. See General Statutes § 8-6 (a) (3). "The major function of the zoning board of appeals and most of its applications involve variances." R. Fuller, supra, § 8.5, p. 167. "When a zoning board of appeals considers and acts upon a variance, it acts in a quasi-judicial capacity." Id., 168. "A variance is authority granted to the owner to use his property in a manner forbidden by the CT Page 9445 zoning regulations." (Internal quotation marks omitted.) Kaeser v. Zoning Board of Appeals, 218 Conn. 438, 445, 589 A.2d 1229 (1991); accord Adolphson v. Zoning Board of Appeals, 205 Conn. 703, 710, 535 A.2d 799
(1988).
Accordingly, the Linvilles' claim that the ZBA usurped the power of the planning and zoning commission is without merit.
The decision of the ZBA to grant the front, side, sideyard and rear setback variances to Bayne was not clearly erroneous, as there exists sufficient evidence of hardship in the record to justify the ZBA's decision. However, the record does not support the ZBA's granting of a four-story variance, which exceeds the maximum allowable number of stories in the B residence zone.
Accordingly, the court sustains the Linvilles' appeal as to the four-story variance. However, the appeal is dismissed in all other respects.
RODRIGUEZ, J.